Filed 6/20/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

ANTHONY ESPARZA CORTEZ, JR.,

     Defendant and Appellant.

E064915

(Super.Ct.No. SWF1302486)

OPINION

APPEAL from the Superior Court of Riverside County. Mac R. Fisher, Judge. Affirmed in part; reversed in part with directions.

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Michael Pulos, and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV, V and VI

1

# I

## INTRODUCTION

Defendant and appellant, Anthony Esparza Cortez, Jr., a convicted felon, and his friend, Michael Saavedra, conspired to commit murder against Rene Perez, and his son-in-law, Alvino Barrera. While defendant drove, Saavedra fired a gun at Perez and Barrera in another car. Defendant and Saavedra then drove to the home of Guadalupe Valle, Perez's relative by marriage. Armed with a rifle and a handgun, defendant and Saavedra fired more than 30 bullets into the house, which was occupied by 10 people. Defendant admitted having possession of the rifle used in the shooting, and of an assault rifle which is banned in California, as well as several rounds of ammunition.

A jury convicted defendant of five charges: conspiracy to commit murder; being a felon in possession of a firearm; possessing firearms ammunition while prohibited from possessing a firearm; assault with a firearm; and possessing an assault weapon. (Pen. Code, §§ 182, 187, 245, subd. (a)(2), 1192.7, subd. (c)(8), 12022, subd. (a)(1), 12022.53, subd. (c), 29800, subd. (a)(1), 30305, subd. (a), 30605, subd. (a).)[1] The court sentenced defendant to an aggregate, determinate term of 29 years four months, followed by an indeterminate term of 25 years to life.

---

[1] All statutory references are to the Penal Code.

2

On appeal, defendant claims the trial court erred in not instructing the jury sua sponte on conspiracy to commit assault with a firearm and conspiracy to shoot at an inhabited dwelling as lesser included offenses of conspiracy to commit murder as charged. Defendant also claims the trial court erred in denying his requested self-defense instruction. Additionally, he asserts substantial evidence did not support the jury's finding that defendant personally and intentionally discharged a firearm in the commission of conspiracy to commit murder.

Finally, defendant asserts four claims of sentencing error, which the People concede. The parties agree the trial court should strike the one-year section 12022, subdivision (a)(1), enhancement as to the assault with a firearm count (count 4). The trial court should also stay under section 654 the one-year section 12022, subdivision (a)(1), enhancement as to the conspiracy count. In addition, under section 654, the trial court should also stay the separate punishment either for count 2 or count 5. Defendant further asserts in supplemental briefing that this court should remand this matter for resentencing on his firearm enhancement (§ 12022.53, subd. (c)) under recently enacted Senate Bill No. 620 ((2017-2018 Reg. Sess.) § 2), which amended section 12022.53, subdivision (h). The parties agree in their supplemental briefs that the recent amendment applies in this case retroactively, because the amendment took effect before final judgment.

We accordingly order this matter remanded to the trial court for the purpose of permitting the trial court to exercise its discretion as to whether to strike defendant's firearm enhancement, and to make the other corrections to defendant's sentence, as noted above. In all other regards, we affirm the judgment.

II

STATEMENT OF FACTS

In reviewing instructional error, we consider the evidence in the light most favorable to defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

A. *Prosecution Evidence*

Defendant first became friends with Valle at a classic car show. Both men are fans of 1950's automobiles. Perez is married to Valle's wife's cousin. In June 2013, there was a fight among the guests at a party at Perez's house. The combatants included defendant, Saavedra, and Barrera.

Perez and Valle helped break up the fight. Perez and Valle discussed what had happened and agreed there was no ongoing problem. Defendant seemed pleased to leave the party. Perez did not see any punches thrown and he thought the dispute had ended.

After the June party, defendant sent several text messages to Valle, asking for photographs from a car show. Eventually, Perez sent defendant the photographs.

4

B. *The Offenses*

The basis for the conspiracy to commit murder in count 1 involved two separate shooting episodes—assault with a firearm on Perez's vehicle and the shooting of the Valle residence.

On August 17, 2013, Perez and Barrera were on a liquor run when a car stopped in front of them at an intersection. Perez saw a hand outside the car but did not see anything else because it was dark. As Perez drove away, he heard a loud pop that could have been a gunshot or a car backfiring. Perez did not see any of the car's occupants or whether they threw beer cans out of the car.

At trial, Perez testified he did not remember telling law enforcement about the car and the incident. However, Perez had stated in his police interview that both he and Barrera were in Perez's car at an intersection when a silver 2000 Chevrolet Monte Carlo with 20-inch chrome rims pulled up to their car, and a single shot was fired from the passenger side towards Perez's car. Perez described the passenger as a bald very thin Hispanic man and said that, as the Monte Carlo drove away, both the driver and the passenger tossed out Modelo beer cans.

The parties stipulated that a witness would testify that, at the intersection where the Perez shooting took place, a silver two-door Chevrolet Impala pulled up with two Hispanic men inside. The driver was a heavyset man, with a mustache; the passenger was a thin man, with a mustache and a goatee.[2] The passenger, holding a black handgun,

---

[2] Defendant testified that both he and Saavedra were stocky; Saavedra's weight was about 230 or 235 pounds. They could wear the same size pants.

yelled that they were from Carson and Fontana. Defendant is from Fontana and Saavedra is from Carson. Defendant was the driver of their car. The parties stipulated that one of the beer cans collected at the scene had Saavedra's fingerprints on it.

C. *The Valle Residence Shooting*

Later on the evening of August 17, 2013, Valle was at home with his wife and other family members. The rooms were illuminated. One of Valle's sons and a grandson were in the living room in the front of the house with the blinds closed. Valle's daughter was taking a shower in a bathroom adjacent to a bedroom near the front door. Two of her friends were waiting for her in the room. Valle's daughter heard a loud noise and the sound of breaking glass. Valle estimated 30 shots were fired through the front door and three walls.

Valle's neighbors across the street heard the shots. The father described two Hispanic men, one big and the other "a little bit smaller." The larger man was shooting a rifle. The thinner man may have fired several shots as well. After the shooting stopped, both men got into the car and drove off. The son testified that he only saw a single shooter, next to a white or a beige car with big silver rims. The shooter was a man, age 30 to 35.

Soon after the shooters left, defendant called Valle multiple times to ask him if he was all right. A subsequent police investigation revealed bullet holes in the door and the inside walls of the house, including the living room windows and the bedroom that was closest to the front door. The bullet strike marks were found all the way from the floor to

6

the ceiling. A .40-caliber shell casing was at the scene. No gun or ammunition of that caliber was found during the subsequent search of defendant's and Saavedra's residences.

During police questioning, defendant admitted that he drinks Modelo beer and knows Saavedra, although he had not seen him for a while. He also admitted there were shell casings in his Chevrolet Monte Carlo. Defendant was equivocal about the details of the Perez assault but he knew no one had been killed.

D. *The Weapons Charges*

The parties stipulated that defendant was prohibited from possessing a firearm due to a prior felony conviction. Defendant admitted that two rifles and ammunition found at his house belonged to him. The officers found firearm ammunition in a bedroom and additional ammunition (nine-millimeter) in the garage. The police found a synthetic polymer stock used to modify a weapon to change its appearance. The police also found a Norinco-320 rifle (an Uzi) in defendant's car. At trial, a prosecution's expert testified that the Norinco-320 rifle meets the definition of an assault weapon banned under the California Assault Weapons Act because it has a pistol grip, and a capacity to accept a detachable magazine and a folding stock. Also, the police found a .223-caliber Ruger Mini-14 rifle in the attic of the house.

E. *The Defense*

The defense argued defendant was not guilty of conspiracy to commit murder because there was no evidence of a conspiratorial agreement to kill or the intent to kill. Concerning the Perez episode, the defense argued that the evidence, at worst, showed a

7

single shot fired with the intent to scare Perez, not to kill anyone in his car. As to the Valle shooting, the defense argued that Saavedra returned fire only after someone had shot at them from the direction of the Valle house.

Defendant testified that he denied conspiring to kill anyone or intending to kill anyone.[3] On August 17, 2013, defendant finished work and headed home, stopping to buy six 24-ounce Modelo beer cans. Defendant then left his home, planning to attend a children's birthday party at Saavedra's house, so he also bought a gift card and another 36 cans of Modelo beer. Defendant arrived at around 6:00 or 6:30 p.m. Defendant had placed weapons in the car—handguns and a Ruger Mini-14 rifle—because the next morning, he planned to go to a shooting range in Fontana.

After drinking heavily, defendant, Saavedra, and another man made a beer run. Defendant bought another 30-pack of Modelo beer while Saavedra bought a 30-pack of Bud Light. They returned to the party and played darts. Defendant had three or four shots of tequila; Saavedra drank more because he was losing the darts competition.

After Saavedra and his wife had an argument, she asked everyone to leave. Defendant left the party with Saavedra and again stopped by a liquor store. Saavedra stayed in the car while defendant bought beer. Defendant encountered Barrera, with whom he had the fight in June. Defendant thought the fight was no longer an issue, but Barrera kept repeating, "Hey, bitch. Remember me?" Barrera then threw a beer bottle at defendant but missed.

---

[3] The trial court admitted a prior conviction to impeach his credibility.

8

Defendant drove his car to Perez's house.  Defendant wanted to ask Perez about the argument with Barrera.  When Perez did not answer, defendant kicked over a motorcycle in anger.  Defendant then drove back to the same liquor store and bought a 30-pack of Modelo beers and an 18-pack of Bud Light.  At that point, defendant already had 15 to 18 beers.

As they were driving, defendant and Saavedra saw Barrera driving Perez's car in the opposite direction.  Without any notice, Saavedra fired a single shot.  Afterwards, Saavedra told defendant that he did not intend to shoot anyone.  Barrera drove off in a different direction.  Defendant and Saavedra did not pursue him.

F.  *The Valle Residence Shooting*

Defendant and Saavedra noticed police activity and decided to go to Valle's house to evade the police and hide the guns.  Defendant drove to the Valle house and parked, blocking the driveway at an angle.  Defendant got out of the car and grabbed as much beer as he could.  Saavedra took his handgun and rifle.  Defendant noticed two men by the garage door, wearing black sweaters with hoods, concealing their faces.  One man started to shoot.  Saavedra dove and returned fire.  They continued to exchange fire until defendant threw a beer can at the shooter, who ran into the house, firing rounds as he moved towards the entrance.

After the shooting finished, defendant and Saavedra slowly drove off.  Defendant was nervous and fumbling with his keys.  Saavedra had been scorched by a round that came very close to him.  Defendant checked to see if Saavedra was all right.  Defendant

9

called Valle and asked why he was shooting at him. Valle said that he could not really talk and that he would call him back later.

## III

## INSTRUCTION ON CONSPIRACY TO COMMIT ASSAULT WITH A FIREARM OR TO SHOOT AT AN INHABITED DWELLING

Defendant argues the trial court had a sua sponte duty to instruct the jury on two offenses that he argues were necessarily included within the charged offense of conspiracy to commit murder: conspiracy to commit assault with a firearm and conspiracy to shoot at an inhabited dwelling. However, neither offense was necessarily included within conspiracy to commit murder as charged. The alleged conspiracy agreement was only to commit murder. There are no allegations defendant conspired or agreed to commit an assault with a firearm or shoot at an inhabited dwelling. Such conspiracy offenses thus are not necessarily included offenses.

In addition, substantial evidence did not support giving either instruction. At trial, defendant contended he did not commit any offense. He also did not claim he conspired to commit any lesser offense. Based on the evidence that defendant and Saavedra fired more than 30 bullets into an occupied residence, it was not reasonable for a jury to find that defendant conspired to commit an assault with a firearm or conspired to shoot at an inhabited house, instead of finding defendant conspired to commit murder.

10

Finally, any error was harmless because there was overwhelming evidence defendant conspired to commit murder when he and Saavedra both simultaneously fired a deluge of bullets into Valle's home.

A. *Procedural Background*

Count 1 of the charging document alleged that defendant conspired to commit murder in violation of section 187 based on 10 overt acts: (1) defendant and Saavedra armed themselves; (2) defendant drove his car; (3) defendant pulled his car in front of a car driven by Perez; (4) Saavedra fired one shot at Perez's vehicle; (5) defendant then drove to the Valle residence; (6) defendant and Saavedra exited the car and approached the Valle residence; (7) and (8) both men fired their weapons—about 30 bullets—at the house; (9) defendant and Saavedra then fled the scene; and (10) defendant hid the .223-caliber rifle used in the shooting in his home's attic.

The court instructed the jurors that to find defendant guilty of conspiracy to commit murder as charged, they had to find that defendant and Saavedra agreed intentionally and unlawfully to kill and committed at least one of the overt acts alleged. The court further instructed the jury that the "People have presented evidence of more than one event to prove that the defendant committed this offense [of conspiracy to murder], specifically evidence of the alleged shooting of Rene Perez and evidence of an alleged shooting at [Valle's] residence." The overt acts could apply either to conspiracy to commit murder of Perez or murder at the Valle residence. The jury was also instructed that, in determining whether defendant committed the alleged overt acts, it was to

11

consider "all of the evidence presented about the overt acts." Finally, in finding defendant guilty of conspiracy to commit murder as charged, the jury found that, in committing that offense, defendant personally and intentionally discharged a firearm and that he participated as a principal in committing that offense, knowing that another principal to the offense was armed with a firearm.

B. *Law Applicable to Determining a Lesser Included Offense*

The test for determining whether there is a necessarily included offense is whether one offense cannot be committed without necessarily committing another offense; the latter is a necessarily included offense. (*People v. Pendleton* (1979) 25 Cal.3d 371, 382.) "An offense is necessarily included in the charged offense if (1) under the statutory definition of the charged offense the charged offense cannot be committed without committing the lesser offense, or (2) the charging allegations of the accusatory pleading include language describing the offense in such a way that if the charged offense was committed as specified, the lesser offense was necessarily committed." (*People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1707 (*Fenenbock*); see also *People v. Lopez* (1998) 19 Cal.4th 282, 288-289; *People v. Clark* (1990) 50 Cal.3d 583, 636.) These two lesser-included-offense tests are known as the elements test and the accusatory pleading test, respectively. Often, when considering whether to instruct on a lesser included offense (the relationship) courts have applied either the elements test or the accusatory pleading test. (*People v. Juarez* (2016) 62 Cal.4th 1164, 1174; *People v. Shockley* (2013) 58 Cal.4th 400, 404.)

12

Here, the parties agree the assault and dwelling-shooting conspiracy offenses do not qualify as lesser included offenses to the murder conspiracy charge under the elements test. The issue here is whether the offenses qualified as lesser included offenses under the accusatory pleading test by virtue of language in the information describing the overt acts. In determining whether an accusatory pleading encompasses an allegedly lesser included offense, the courts "consider *only* the pleading for the greater offense." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1036.) It is "of no consequence that the evidence at trial might also establish guilt of another and lesser crime than that charged." (*People v. Steele* (2000) 83 Cal.App.4th 212, 218.)

California courts have a sua sponte duty to instruct the jury on all necessarily included offenses supported by substantial evidence from which a reasonable juror could find the defendant guilty of the lesser offense but not the greater. (*People v. Licas* (2007) 41 Cal.4th 362, 366, citing *People v. Cole* (2004) 33 Cal.4th 1158, 1218.) This court independently reviews a trial court's failure to instruct the jury on a necessarily included offense. (*Licas*, *supra*, at p. 366.)

C. *Conspiracy*

Section 182 defines the crime of conspiracy as two or more persons conspiring to "commit any crime." (§ 182, subd. (a)(1).) Section 184 requires that one or more parties to the agreement commit an act to "effect the object" of the conspiracy. (§ 184.) Thus a conspiracy requires proof that the defendant and at least one other person "had the specific intent to agree or conspire to commit an offense, as well as the specific intent to

13

commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416, quoting § 184; *People v. Cortez* (1998) 18 Cal.4th 1223, 1232.)  An overt act is an "'"'outward act done in pursuance of the crime and in manifestation of an intent or design, looking toward the accomplishment of the crime."'"' (*People v. Johnson* (2013) 57 Cal.4th 250, 259, quoting *People v. Zamora* (1976) 18 Cal.3d 538, 549, fn. 8.)  The overt act requirement "consists of *an* overt act, not a *specific* overt act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1134.)  The jury need not unanimously agree on a particular overt act but only that the defendant or a coconspirator committed at least one of the overt acts alleged.  (*Ibid.*)

Conspiracy is a crime distinct from the substantive offense that is its object; it does not require commission of the substantive offense (target offense).  (*People v. Swain* (1996) 12 Cal.4th 593, 600; *People v. Morante*, *supra*, 20 Cal.4th at pp. 416-417.)  The conspiratorial agreement is itself the essence of the crime, and is what it seeks to punish. (*People v. Johnson*, *supra*, 57 Cal.4th at p. 258, citing *Swain*, *supra*, at p. 599.)  That is why, "[o]nce one of the conspirators has performed an overt act in furtherance of the agreement, 'the association becomes an active force[;] it is the agreement, not the overt act, which is punishable.  Hence the overt act need not amount to a criminal attempt and it need not be criminal in itself.'" (*Johnson*, *supra*, at p. 259.)

D. *Application of Fenenbock and Cook*

Defendant argues that under *People v. Cook* (2001) 91 Cal.App.4th 910 (*Cook*), the trial court was required to instruct sua sponte on conspiracy to commit assault with a firearm and conspiracy to shoot into an inhabited home, as lesser included offenses of the count 1 charge of conspiracy to murder. The People argue *Cook* was wrongly decided and this court should follow *Fenenbock*, *supra*, 46 Cal.App.4th 1688, in which the court held that the trial court was not required to instruct on any lesser conspiracy crimes. As noted by the People, there is a split of authority as to whether the overt acts allegations in the accusatory pleading can be considered when determining whether the court must instruct sua sponte on a lesser included conspiracy offense under the accusatory pleading test. (*Cook*, *supra*, at p. 920.)

In *Fenenbock*, the defendants argued the trial court erred in not sua sponte instructing on conspiracy to commit assault, battery, and mayhem as lesser included offenses of conspiracy to commit murder. At the outset, the parties in *Fenenbock* agreed that the target offense of assault, battery, and mayhem did not qualify as offenses included within the statutory definition of murder under the elements test. The defendants, however, argued that the offenses qualified as lesser included target offenses under the accusatory pleading test "by virtue of language in the information describing the overt acts." (*Fenenbock*, *supra*, 46 Cal.App.4th at p. 1707.) The *Fenenbock* court disagreed, stating: "Here, in the context of deciding whether the trial court was obligated to instruct sua sponte on lesser included offenses, we conclude that allegations of overt

15

acts committed in furtherance of the alleged conspiracy do not provide notice of lesser included target offenses." (*Id.* at p. 1708.)  This is because the criminal act in a conspiracy is the agreement.  (*Ibid.*)

*Fenenbock* explained that a conspiracy agreement is not punishable unless an overt act is committed in furtherance of the conspiracy.  (*Fenenbock*, *supra*, 46 Cal.App.4th at p. 1708; §§ 182, subd. (b), 184.)  "[D]ue process principles require that overt acts be pleaded with particularity to give the defendant notice of the prosecution's theory." (*Fenenbock*, *supra*, at p. 1708.)  But "[i]t is the agreement, not the overt act in furtherance of the agreement, which constitutes the offense." (*Id.* at p. 1709.)  The *Fenenbock* court concluded that, "[b]ecause overt acts need not be criminal offenses or even acts committed by the defendant, the description of the overt acts in the accusatory pleading does not provide notice of lesser offenses necessarily committed by the defendant." (*Ibid.*)  Therefore, under *Fenenbock*, "it is the description of the agreement within the accusatory pleading, not the description of the overt acts, which must be examined to determine whether a lesser offense was necessarily the target of the conspiracy." (*Ibid.*)

Defendant urges this court to decline to follow *Fenenbock*, *supra*, 46 Cal.App.4th 1688, and instead follow *Cook*, *supra*, 91 Cal.App.4th 910.  In *Cook*, the defendants appealed their convictions, which included conspiracy to commit assault with a firearm as a lesser included offense of conspiracy to commit murder.  Relying on *Fenenbock*, the *Cook* defendants argued that the trial court violated their right to notice and due process

16

by instructing the jury that if they had a reasonable doubt that the defendants were guilty of conspiracy to commit murder, they could convict the defendants of the lesser included offense of conspiracy to commit assault with a firearm. (*Cook*, *supra*, at p. 913.)

The *Cook* court rejected this contention, holding that "the trial court may look to the overt acts pleaded in a charge of conspiracy to determine whether the charged offense includes the lesser included offense. Under the accusatory pleading test for determining lesser included offenses, we find that conspiracy to commit assault by means of a firearm is a lesser included offense of conspiracy to commit murder as that offense was pleaded in the accusatory pleading. The overt acts alleged in the information gave notice to defendants of the lesser included offense, and the defendants do not claim the facts shown at the preliminary hearing failed to give them notice of the lesser offense or that they were surprised by the evidence presented at trial." (*Cook*, *supra*, 91 Cal.App.4th at p. 914.)

*Cook*, *supra*, 91 Cal.App.4th 910 is distinguishable. In *Cook*, the defendant appealed on the ground the trial court erred in *instructing* on conspiracy to commit assault with a firearm as a lesser included offense of murder, whereas, here, defendant appeals the trial court's *failure to instruct sua sponte* on any lesser included offenses to conspiracy to commit murder. Unlike in the instant case, the *Cook* defendants argued their notice and due process rights were violated by the court instructing on the lesser included offense based on the overt acts allegations. Also, in *Cook*, the People conceded instructional error and requested reversal of the defendants' conspiracy convictions. The

17

*Cook* court nevertheless upheld the trial court's instruction on the lesser included offense, concluding the accusatory pleading provided sufficient notice of the lesser included offense of conspiracy to commit assault with a firearm. (*Id*. at p. 913.)

We agree with *Cook* to the extent that the trial court may consider overt act allegations when determining whether sua sponte instruction on a lesser included conspiracy offense is required. Even though overt acts need not be criminal offenses or acts committed by the defendant, there may be overt act allegations establishing that the defendant has agreed or conspired to commit lesser included target offenses. It is therefore not error for the trial court to consider the overt act allegations when determining whether the conspiracy count allegations as a whole require sua sponte instruction on a lesser included conspiracy offense. The *Cook* court recognized that, "[t]o the extent an accusatory pleading fails to allege overt acts sufficient to give notice of a lesser included offense, the trial court may not rely on the pleading as a basis to instruct on lesser included offenses not included in the allegations of that pleading. Nevertheless, the possibility that some pleadings charging conspiracy may fail to give sufficient notice of lesser included offenses is not cause to hold, as a matter of law, that no pleading charging conspiracy gives sufficient notice of lesser included offenses." (*Cook*, *supra*, 91 Cal.App.4th at p. 921.)

We disagree, however, with *Cook*'s holding that the pleadings, including the overt act allegations, required an instruction on the lesser included offense of conspiracy to commit assault with a firearm. (*Cook*, *supra*, 91 Cal.App.4th at p. 922.) In *Cook*, as in the instant case and in *Fenenbock*, the accusatory pleading did not allege that the defendants agreed to commit any crime, other than murder. There were no allegations, even in the overt acts allegations, that the defendants agreed to commit merely an assault. The *Cook* accusatory pleading alleged the four defendant's conspired to commit murder and in doing so, committed the following overt acts: Two of the defendants purchased a gun to carry out the object of the conspiracy, and all four defendants met and discussed killing the two victims. All four defendants then went to the victims' apartment and one of the defendants shot both victims, killing one of them. The other victim survived. (*Cook*, *supra*, at p. 919, fn. 22.)

Assuming under *Cook* that the trial court could properly consider the alleged overt acts in determining whether a conspiracy charge encompasses other, lesser target offenses, the overt acts alleged in this case did not render defendant's allegedly lesser offenses necessarily included. The description of the conspiratorial agreement to commit murder cannot be fairly read to describe or encompass either conspiracy to commit assault with a firearm or conspiracy to shoot at an inhabited dwelling. Therefore, the trial court was not required to instruct sua sponte on either of these offenses, because the accusatory pleadings did not place defendant on notice of prosecution of any conspiracy offense, other than conspiracy to commit murder. (*Schmuck v. U.S.* (1989) 489 U.S. 705,

19

717; *Cook*, *supra*, 91 Cal.App.4th at p. 921.) Although the overt acts allegations describe acts that would support charges for assault and shooting at an inhabited dwelling, such allegations are insufficient to support conspiracy charges based on those target offenses, because there are no allegations of the requisite element of defendant agreeing or conspiring to commit those target offenses. Therefore, the trial court did not err in not sua sponte instructing on conspiracy to commit assault or shoot at an inhabited dwelling as lesser included offenses of conspiracy to commit murder.

The fact that defendant was charged with the substantive offense of assault with a firearm for the Perez shooting (count 4) does not mean the conspiracy charge necessarily encompassed that offense as a lesser target offense of conspiracy to commit murder, as defendant argues. Defendant and Saavedra could have agreed at the outset to commit murder and then planned to accomplish the murder by ambushing and shooting at Perez and Barrera. They could have then committed the substantive offense of assault with a firearm when Saavedra shot at Perez and Barrera and missed them. (§ 254, subd. (a)(2).) Their commission of assault with a firearm would not have changed the original nature of their conspiracy, which was to commit murder, and it did not render assault with a firearm a necessarily included target offense of the conspiracy to commit murder.

E. *Insufficient Evidence to Support Instruction on Lesser Included Offenses*

Even if the accusatory pleading allegations supported instruction on the offenses of conspiracy to commit assault and shooting at an inhabited dwelling, there was insufficient evidence to support such instructions. A trial court is not obligated to instruct

20

the jury on a necessarily included offense without substantial evidence or with no evidence that the offense was less than charged. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1100-1101, 1106.) Here, there was insufficient evidence that, if there was a conspiracy as alleged, it was for anything other than murder. There was evidence that defendant was in a feud with Barrera, Perez's son-in-law. Perez was related by marriage to Valle's wife. On the evening of the shootings, defendant and Saavedra ambushed Perez and Barrera at an intersection near Perez's home, and Saavedra fired a gun at Perez's car. Then, defendant and Saavedra drove to Valle's house and, using a rifle and a handgun, together fired approximately 30 bullets into the house, perforating the walls from floor to ceiling and the house from front to back. No reasonable juror could have found from the foregoing evidence that defendant and Saavedra did not conspire to kill someone but conspired only to assault someone with a firearm or to shoot at the Valle residence (§§ 240, 254, subd. (a)(2)), or shoot at an inhabited dwelling (§ 246).

Furthermore, defendant did not claim at trial that he committed the two lesser offenses. Rather, defendant testified he did not conspire with Saavedra to commit any offense at all. Instead, Saavedra abruptly fired the handgun at Perez's car without there being any agreement or discussion with defendant. The Valle shooting occurred because someone fired on defendant and Saavedra first. Because substantial evidence was lacking to support an instruction on either allegedly lesser target offense, the trial court was not required to instruct the jury on them.

21

Defendant's federal constitutional claim also fails because defendant's asserted offenses were not necessarily included within the charged offense of conspiracy or supported by substantial evidence. (*People v. Valentine* (2006) 143 Cal.App.4th 1383, 1386-1388 [rejecting claim that failure to instruct on an offense not necessarily included within the charged offense violated defendant's right to present a complete defense, as that failure "simply reflected the fact that the prosecutor chose not to file on the other charge."].) Our Supreme Court has also made clear that the failure to instruct on a necessarily included offense in a noncapital case is remediable only under state law, not under federal constitutional law. (See *People v. Breverman* (1998) 19 Cal.4th 142, 165 [no federal constitutional right to a necessarily included offense instruction in a noncapital case].)

F. *Harmless Error*

Finally, if there was any error in not instructing on conspiracy to commit assault with a firearm or conspiracy to shoot at an inhabited dwelling, it was harmless because it was not reasonably probable a more favorable verdict would have occurred but for the error. (*People v. Breverman*, *supra,* 19 Cal.4th at p. 162, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Lasko* (2000) 23 Cal.4th 101, 111.) The record establishes that the jury based defendant's conviction for conspiracy to commit murder on the Valle shooting, because the jury specifically found that defendant personally and intentionally discharged a firearm in committing that offense.

Also, there was overwhelming evidence supporting defendant's conviction for conspiracy to commit murder. Defendant admitted at trial that he and Saavedra were armed when they went to the Valle residence. A witness testified that both people shot at the house and that defendant, the heavier person, was shooting the rifle. The shell casings at the scene had been fired from defendant's rifle. Defendant presented his chosen defense by testifying at trial that he did not conspire to commit any crime and he shot at the Valle residence only in response to being fired upon. Defendant did not request an instruction on either lesser conspiracy offense and instead argued that the evidence raised a reasonable doubt of his guilt of conspiracy as charged or was otherwise insufficient to establish guilt. (See *People v. Rogers* (2006) 39 Cal.4th 826, 872.)

Since the record demonstrates that the conspiracy conviction was based on the Valle shooting and was supported by substantial evidence, any error in failing to instruct the jury on the allegedly lesser conspiracy offenses was also harmless, because the evidence did not support a finding that defendant committed either lesser conspiracy offense instead of conspiracy to commit murder. No reasonable juror would have found defendant guilty of any conspiracy crime less than conspiracy to commit murder.

IV

SELF-DEFENSE INSTRUCTION

Although defendant agreed the trial court should not give his requested instruction on self-defense, he now argues the trial court erred. The trial court did not include a self-defense instruction in its final instructions and defendant argued to the jury that defendant

23

and Saavedra had not intended or conspired to commit murder at the Valle residence but that Saavedra had instead simply returned fire.  In spite of defendant's forfeiture of this issue, the trial court was not required to give that instruction because it duplicated other instructions given and it would have confused the jury with irrelevant issues.

The doctrine of invited error prohibits a reversal on appeal because of an error made by the trial court at defendant's behest.  (*People v. Wickersham* (1982) 32 Cal.3d 307, 323-324, disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 201.)  While defendant initially requested a self-defense instruction, he explicitly agreed with the trial court's explanation why the instruction should not be given because the instruction was inconsistent with his defense.  A trial court has a sua sponte duty to instruct the jury on any defense upon which the defendant relies or that which is supported by substantial evidence and is not inconsistent with the defense theory of the case.  (*People v. Anderson* (2011) 51 Cal.4th 989, 996, citing *People v. Gutierrez* (2009) 45 Cal.4th 789, 824.)  Defendant's self-defense claim was an attempt to negate or rebut the prosecution's proof on an element of the charged offense of conspiracy.  A jury finding of self-defense would have rendered the prosecution's case legally insufficient or exceedingly weak.  Because defendant's claim of self-defense was proffered to negate or rebut an element of the conspiracy charge, the trial court had no sua sponte duty to give it; rather, a request was necessary.  (*Anderson*, *supra*, at p. 996; see *People v. Covarrubias* (2016) 1 Cal.5th 838, 874 [trial court not required to sua sponte instruct jury on claim-of-right defense that served only to negate mental state element of charged

24

offense of robbery].)  The record shows defendant functionally withdrew his self-defense instruction request.  Defendant's claim of error is therefore forfeited.  (*People v. Ramirez* (2006) 39 Cal.4th 398, 474.)

Notwithstanding forfeiture, the trial court was correct not to instruct the jury on self-defense.  A court has a duty to refrain from issuing an instruction that is duplicative of other instructions or potentially confusing.  (*People v. Gurule* (2002) 28 Cal.4th 557, 659; see *People v. Satchell* (1971) 6 Cal.3d 28, 31, fn. 10, overruled on other grounds in *People v. Flood* (1998) 18 Cal.4th 470, 484-490.)  Here, the instruction would have been duplicative.  The trial court fully instructed the jury on the elements of conspiracy and the target offense of murder.  To convict, the jury had to find defendant and Saavedra intended to conspire to commit murder.  Defendant's contrary claim would have, if believed by the jury, negated the intent element of conspiracy and compelled acquittal.  But if the jury found defendant and Saavedra conspired to commit murder, that finding would have contradicted any form of self-defense, perfect or imperfect.  The trial court's instructions on the offense of conspiracy therefore encompassed defendant's self-defense claim, rendering any self-defense instruction superfluous and unnecessary.  (See *People v. Canizalez* (2011) 197 Cal.App.4th 832, 857 [pinpoint instructions unnecessary where standard instructions fully and adequately advise the jury on a particular issue].)  The jury, of course, is presumed to have understood and correctly applied the instructions given.  (*People v. Carey* (2007) 41 Cal.4th 109, 130.)  A self-defense instruction would have confused the jury by introducing irrelevant legal principles about the reasonableness

of the need to use and extent of deadly force.  Therefore, the trial court did not err in not giving a self-defense instruction.  (See *People v. Watie* (2002) 100 Cal.App.4th 866, 883.)

Furthermore, any error was harmless.  In convicting defendant, the jury found that defendant agreed and intended to commit murder, a factual finding incompatible with any form of self-defense, perfect or imperfect.  Having previously agreed to commit murder, defendant cannot then claim his intent to kill arose from a belief in the need to defend himself or someone else.  The jury's conspiracy verdict "necessarily impl[ies] a complete rejection of all the self-defense evidence presented by defendant."  (*People v. Crandell* (1988) 46 Cal.3d 833, 875, disapproved on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.)  There is no reasonable probability a self-defense instruction, if given, would have resulted in a more favorable outcome for defendant.  Any error was thus harmless.  (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)[4]

---

[4] The absence of a self-defense instruction also did not violate defendant's federal constitutional right to present a complete defense.  Not only was the instruction irrelevant and confusing, defendant was still able to present the defense he chose.  No federal constitutional violation occurred.

26

V

## SUBSTANTIAL EVIDENCE OF FIREARM ENHANCEMENT

Defendant next argues substantial evidence does not support the jury's finding that he personally and intentionally discharged a firearm in the commission of the offense of conspiracy to commit murder.[5]  According to defendant, the jury had to find the gun discharge aided in the completion of an element of conspiracy and the shooting at the Valle residence could not have aided in completing a conspiracy element because the crime of conspiracy was already completed at the time.  However, section 12022.53, subdivision (c), does not require that a gun discharge aid in the completion of a conspiracy element, as defendant argues.  The statute requires only that the gun discharge be a part of the same continuous transaction of which the underlying offense is a part.

Defendant's claim involves a question of statutory interpretation on the meaning of the phrase "in the commission of" as used in the firearm enhancement statute, which is subject to de novo review.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)  If clear and unambiguous, the statutory language is effectuated without resort to statutory construction; otherwise, it is construed within the context of the statutory scheme of which it is a part, and in a manner that best fulfills legislative intent.  (*People v. Pieters* (1991) 52 Cal.3d 894, 898-899.)  This court reviews the sufficiency of the evidence to support a firearm enhancement finding using the same standards applicable to a criminal conviction.  (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1058 (*Carrasco*).)  We

[5]  That finding resulted in an additional, consecutive, 20-year prison term for defendant.  (§§ 12022.53, subd. (c), 1192.7, subd. (c)(8).)

27

presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*People v. Rayford* (1994) 9 Cal.4th 1, 23.)

Defendant challenges whether section 12022.53 applies to conspiracy to commit murder. Section 12022.53, subdivision (a), includes among the offenses specified "[a]ny felony punishable by death or imprisonment in the state prison for life." (§ 12022.53, subd. (a)(17).) Conspiracy to commit murder is punishable by life in prison. (See §§ 190, subd. (a) [first degree murder punishable by death or life imprisonment], 182, subd. (a)(6) [conspiracy to commit an offense is punishable "in the same manner and to the same extent as is provided for the punishment of that felony."].) Section 12022.53, subdivision (a), thus clearly and unambiguously includes conspiracy to commit murder.

In particular, section 12022.53, subdivision (c), provides as follows: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years." The express legislative purpose was to effect deterrence by imposing longer sentences for violent crimes committed with a firearm. (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172.) The statute "is to be construed expansively, not narrowly." (*People v. Frausto* (2009) 180 Cal.App.4th 890, 898 (*Frausto*); *People v. Chambers* (1972) 7 Cal.3d 666, 672.)

28

The Court of Appeal held in *Frausto*, that "a firearm is discharged 'in the commission of' a felony within the meaning of section 12022.53[, subdivision] (d) if the underlying felony and the discharge of the firearm are part of one continuous transaction, including flight after the felony to a place of temporary safety." (*Frausto*, *supra*, 180 Cal.App.4th at p. 902; see *People v. Mejia* (2012) 211 Cal.App.4th 586, 616, fn. 5 [§ 12022.53, subd. (c) requires only that the firearm discharge be part of the same continuous transaction as the underlying offense].) Under this approach, "the discharge of a gun before, during, or after the felonious act may be sufficient if it can fairly be said that [it] was a part of a continuous transaction." (*Frausto*, *supra*, at p. 902.)

A reasonable juror could have found from the trial evidence that defendant and Saavedra conspired to commit murder when they drove to the Valle residence and together fired more than 30 bullets into the residence. Based on this, a reasonable juror could have found that defendant's act of firing a rifle into the residence was part of the same continuous transaction as was his commission of the offense of conspiracy to commit murder. Defendant thus discharged his firearm in the commission of the conspiracy, triggering the section 12022.53, subdivision (c), firearm enhancement. (*People v. Jones* (2001) 25 Cal.4th 98, 108-110; *Frausto*, *supra*, 180 Cal.App.4th at p. 902.)

The cases of *Carrasco*, *supra*, 137 Cal.App.4th 1050 and *People v. Masbruch* (1996) 13 Cal.4th 1001 do not establish a requirement that the firearm use aid defendant in completing an essential element of conspiracy to commit murder. Instead these cases

29

describe how a defendant can be deemed to have used a firearm in the commission of a felony if the firearm use "aids the defendant in completing one of [the charged offense's] essential elements." (*Carrasco*, *supra*, at p. 1059; *Masbruch*, *supra*, at p. 1012.) *Carrasco* and *Masbruch* involved situations in which the defendant initially displayed or used a firearm but committed the charged offenses some time later without displaying or using the gun. Both cases held that the defendants' initial use of the firearm carried over to the time of the offenses, so that such use could be deemed to have been "in the commission of" the offenses for firearms enhancement purposes because "[a] firearm use enhancement attaches to an offense, regardless of its nature, if the firearm use aids the defendant in completing one of its essential elements." (*Masbruch*, *supra*, at p. 1012; *Carrasco*, *supra*, at p. 1059.) In *Carrasco*, the initial display or use of the gun satisfied the force or fear element of the charged offense of robbery (*Carrasco*, *supra*, at pp. 1057, 1060); in *Masbruch*, it satisfied the force or fear element of forcible rape and sodomy (*Masbruch*, *supra*, at p. 1011). Neither *Carrasco* nor *Masbruch* established a uniform requirement that the firearm use must have aided the defendant in completing an essential element of the charged offense.

Instead, the California Supreme Court has rejected such a construction of the weapons enhancement statutes. (*People v. Jones*, *supra*, 25 Cal.4th at pp. 101-102, 109-111; *People v. Fierro* (1991) 1 Cal.4th 173, 225-227.) There is no requirement that the gun use specifically aid the defendant in committing an offense element. Instead, all that is required is that the firearm use be part of the same continuous transaction as the

underlying offense.  (*Jones*, *supra*, at pp. 108-110; *Frausto*, *supra*, 180 Cal.App.4th at p. 902.)  Here, defendant's firing of the bullets into the Valle residence was part of the same continuous transaction as was his conspiracy to commit murder.

Second, the fact defendant's discharge of the firearm was part of the same continuous transaction as the conspiracy itself renders invalid defendant's claim that the conspiracy was already completed at the time of the discharge.  (*People v. Jones*, *supra*, 25 Cal.4th at pp. 108-110; *Frausto*, *supra*, 180 Cal.App.4th at p. 902.)  The "'classic example of a continuing offense is conspiracy.'"  (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 537, quoting *U. S. v. McGoff* (D.C. Cir. 1987) 831 F.2d 1071, 1078.)  Because conspiracy is by nature a continuing offense, the period during which a firearms enhancement may attach to such an offense is "very broad."  (See *People v. Becker* (2000) 83 Cal.App.4th 294, 298.)  Here, defendant's conspiracy to commit murder was still operative and continuing at the time defendant fired his gun into the Valle residence.  Defendant's violent and dangerous behavior is what section 12022.53, and the other firearm enhancement statutes, is intended to deter.  Substantial evidence supports the jury's finding that defendant personally and intentionally discharged a firearm in the commission of conspiracy to commit murder.

## VI

## FIREARM ENHANCEMENT

During sentencing, the trial court imposed a 20-year sentence enhancement on count 1 under section 12022.53, subdivision (c), for personal and intentional discharge of a firearm. On October 11, 2017, the Governor signed Senate Bill No. 620, amending section 12022.53, subdivision (h). This amendment provides the trial court with new discretion under section 1385 to strike the section 12022.53, subdivision (c), firearm enhancement. The amendment became effective January 1, 2018.

While the instant appeal was pending, and after enactment of Senate Bill No. 620, this court permitted the parties to file supplemental briefing on the issue of whether amended section 12022.53, subdivision (h), applies retroactively to defendant's case. In their supplemental briefs, the parties agree, as does this court, that recently amended section 12022.53, subdivision (h), applies retroactively to this case, because the judgment was not final when the amendment to section 12022.53, subdivision (h), became effective. We agree with the parties that this matter should therefore be remanded for the purpose of allowing the trial court to exercise its discretion as to whether to strike defendant's section 12022.53, subdivision (c), firearm enhancement.

# VII

# DISPOSITION

The judgment of conviction is affirmed.  The judgment of sentence is reversed and this matter is remanded to the trial court for resentencing, with instructions to the trial court to (1) strike the one-year section 12022, subdivision (a)(1), enhancement as to the assault with a firearm count (count 4); (2) stay under section 654 the one-year section 12022, subdivision (a)(1), enhancement as to the conspiracy count (count 1); (3) elect under section 654 to stay separate punishment either on count 2 or count 5; and (4) exercise its discretion under recently amended section 12022.53, subdivision (h), as to whether to strike defendant's section 12022.53, subdivision (c), firearm enhancement (count 1).[6]

CERTIFIED FOR PARTIAL PUBLICATION

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

---

[6] We express no opinion as to how the trial court should exercise its discretion under section 12022.53, subdivision (h), on remand.