Filed 9/8/22 P. v. Lispier CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAFAEL LISPIER,<br><br>    Defendant and Appellant. | G060356<br><br>(Super. Ct. No. 95CF2588)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Elizabeth G. Macias, Judge. Affirmed.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorneys General, Alan L. Amann and A. Natasha Cortina, Deputy Attorney General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Rafael Lispier appeals from an order denying his petition for resentencing under Penal Code former section 1170.95 (now Pen. Code, § 1172.6).[1] The trial court found defendant failed to establish a prima facie case for relief because he was convicted of conspiracy to commit murder.

On appeal, defendant argues his conspiracy to commit murder conviction is an eligible offense for resentencing relief. He also claims it is possible the jury found him guilty of conspiracy to commit murder without finding he had an intent to kill.

We disagree. Conspiracy to commit murder is not an eligible offense for resentencing relief. In any event, the jury necessarily found defendant had an intent to kill. We accordingly affirm the trial court's order.

## FACTS[2]

"During 1994 and 1995, four members of the Central Myrtle gang were killed in the Santa Ana area. In August 1995, Lispier, a member of the gang, went to the wake of one of the gang fatalities, Lucio Hernandez. Hernandez had been shot while standing in front of Lispier's home, a victim of a drive-by shooting allegedly perpetrated by a rival gang, the Public Vandals (PV).

"Lispier left the wake with Alex Urrutia, whose brother was a member of the affiliate gang of Central Myrtle. The two gang brothers left in a white van[3] with

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). All further statutory references are to the Penal Code.

[2] We provide a summary of the relevant facts from this court's prior opinion. (*People v. Lispier* (May 26, 1999, G020805) [nonpub. opn.] (*Lispier I*).) Additional factual details may be found in the prior opinion.

[3] The van belonged to Gloria Canales. It was stolen from the front of her house in Santa Ana on the evening Lispier attended the wake. She recovered her van two days later and found shell casings in its interior.

Urrutia expressing his desire to retaliate against PV with a "payback" act, such as a drive-by shooting. Lispier later claimed that he told Urrutia that he did not do "that kind of thing," but made no effort to get out of the van or stop Urrutia.

"Urrutia had three firearms with him: two pistols and an assault rifle. He handed Lispier a .380 pistol with instructions to shoot out the back window as they drove away. Lispier accepted the gun and followed the instructions by raising it and pointing it out of the window. At the time, he was on probation to the juvenile court with a condition barring him from owning or possessing firearms.

"Urrutia and Lispier then drove by the home of a known PV member, Cesar Jauregui, who lived on Shelton Street. Jauregui happened to be standing outside with a neighbor as well as another friend who was a former PV member. Driving past the house, Urrutia and Lispier stared at the men in the yard, a customary form of taunting rival gang members. Realizing the danger they were in, Jauregui and his neighbor took cover, leaving the former PV member alone in the front yard.

"Urrutia and Lispier drove back around to Jauregui's house; this time Urrutia pulled out a gun and began shooting. According to Lispier, Urrutia first fired the assault rifle through the front passenger window two or three times. He then threw the rifle into the back seat for Lispier to use, and continued firing with a .38 caliber revolver. The jury found that Lispier did not actually fire any shots although he held up the .380 gun and aimed it at the men. After the shooting, Juaregui's neighbor ran to his car and followed the van until it stopped in front of Lispier's house."

In 1996, a jury convicted defendant of one count of receiving stolen property (§ 496, subd. (a); count 2); two counts of street terrorism (§ 186.22, subd. (a); counts 4 and 8); one count of conspiracy to commit murder (§ 182; count 5); and one count of being a probationer in possession of a firearm (§ 12021, subd. (d); count 9).[4]

---

[4]    To avoid any confusion, we refer to the counts as they were alleged and numbered in the amended information.

3

The jury also found gang enhancements to be true on counts 2, 5, and 9 (§ 186.22, subd. (b)) along with a firearm enhancement on count 5 (§ 12022, subd. (a)(1)). Among other charges, the jury found defendant was not guilty of attempted murder (§§ 187, subd. (a), 664; count 6).

The court sentenced defendant to an indeterminate sentence of 28 years to life in state prison as follows: (1) 25 years to life on count 5, plus one year for the firearm enhancement and two years for the gang enhancement; (2) a concurrent term of 2 years on count 2, plus 2 years for the gang enhancement; and (3) a concurrent term of 2 years on count 9, plus 2 years for the gang enhancement. The court also stayed sentences on counts 4 and 8 pursuant to section 654.

Another panel of this court affirmed a modified judgment in 1999. (*Lispier I*, *supra*, G020805.) This court reduced defendant's sentence from 28 years to 26 years to life, but found the evidence was sufficient to support defendant's conspiracy conviction and that the conspiracy instructions were proper. (*Ibid.*)

In 2019, defendant filed a petition seeking resentencing pursuant to section 1172.6. After a hearing where defendant was represented by counsel, the court denied the petition. The court found defendant was not eligible for resentencing because he was convicted of conspiracy to commit murder. Defendant timely filed a notice of appeal.

DISCUSSION

Defendant contends the court improperly denied his petition for resentencing on the conspiracy to commit murder conviction without conducting an evidentiary hearing. He acknowledges a conviction for conspiracy to commit murder includes a finding of intent to kill, but he claims there are "numerous aspects of [his] conviction and original appeal that support the possibility . . . the jury did not truly find [he] had the intent to kill, but instead convicted him based on his having participated in a drive by shooting by being in the car with, and in the same gang as, the shooter."

4

Defendant accordingly argues the denial of his petition deprived him of his right to due process. For the following reasons, we disagree with defendant's contentions and affirm.

*Applicable Law*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending sections 188 and 189 and adding section 1172.6, such that persons convicted of felony murder or murder under a natural and probable consequences theory could seek resentencing or to have the conviction vacated. (*People v. Lewis* (2021) 11 Cal.5th 952, 957, 959.) Senate Bill 1437 also created a procedure, codified in section 1172.6, by which defendants could seek resentencing if their conduct did not constitute murder as redefined by Senate Bill 1437. (*Lewis,* at p. 957.) If the petitioner makes a prima facie showing, the trial court is required to issue an order to show cause. (§ 1172.6, subd. (c).) If the parties do not stipulate petitioner is entitled to relief, the court must conduct an evidentiary hearing. (*Id.*, subd. (d).)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2; Senate Bill 775) amended section 1172.6 to expand resentencing eligibility to persons convicted of attempted murder and manslaughter. Because the trial court's denial of defendant's petition turned on an application of section 1172.6 to the undisputed facts, our review is de novo. (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 123.)

*The Court Did Not Err by Denying Defendant's Petition for Resentencing*

Here, the People correctly argue conspiracy to commit murder is not an eligible offense for resentencing relief. Section 1172.6, subdivision (a) provides: "A person convicted of *felony murder or murder* under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder* under the natural and probable consequences doctrine, or *manslaughter* may file a petition with the court that sentenced the petitioner to have the petitioner's *murder, attempted murder, or manslaughter conviction* vacated . . . ." (Italics added.) By its plain terms, section 1172.6 does not include conspiracy to commit murder as a crime that is eligible for relief. Instead, the statute only applies to convictions for murder, attempted murder, or manslaughter.

In *People v. Whitson* (2022) 79 Cal.App.5th 22 (*Whitson*), the Second District Court of Appeal held former section 1170.95 "does not permit a challenge to a conviction for conspiracy to murder." (*Whitson*, at p. 35.) The court noted the statute does not mention conspiracy to murder and emphasized the Legislature had an opportunity to extend relief to these convictions when it promulgated Senate Bill No. 775. (*Whitson*, at pp. 34-35.) But Senate Bill No. 775 amended the statute to include convictions for attempted murder and manslaughter in the list of crimes subject to petition while omitting conspiracy to murder. (*Whitson*, at p. 34.) Relying on the legislative history of Senate Bill Nos. 1437 and 775, the court found there was no "legislative intent to lessen the penalty for conspiracy to murder under any circumstance." (*Whitson*, at p. 35.) The court reasoned this was "presumably because the crime as defined in the Penal Code is based on the conspirator defendant's own subjective *mens rea*: conspiracy to murder requires that a defendant either act with malice or intend to kill." (*Ibid.*) In other words, "[a] jury's finding that a defendant is guilty of

conspiracy to murder, when a murder has in fact been committed, is 'in effect [a finding] that [the defendant] was a direct aider and abettor of the killings.'" (*Id.* at p. 36.)

Defendant argues his conspiracy to murder conviction falls within section 1172.6 because the statute applies to any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Id.*, subd. (a).) As the *Whitson* court held, "A theory imputing malice is relevant only to vacating a conviction for one of the statute's specified crimes, which do not include convictions for conspiracy." (*Whitson*, *supra*, 79 Cal.App.5th at p. 36.)

Apart from the unambiguous language of section 1172.6, defendant also is precluded from resentencing relief because the jury necessarily found he had an intent to kill. On the conspiracy count, the court provided CALJIC No. 6.10, which instructed the jury that defendant had to have an intent to kill to be guilty of conspiracy to commit murder. The instructions provided in relevant part: "A conspiracy is an agreement entered into between two or more persons with *the specific intent to agree to commit the public offense of murder* and with the further *specific intent to commit such offense* . . . followed by an overt act committed in this state by one [or more] of the parties for the purpose of accomplishing the object of the agreement." (Italics added.) The instructions further stated: "In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement *and specific intent*, there must be proof of the commission of at least one of the overt acts alleged in the information." Thus, the jury's guilty verdict on the conspiracy count necessarily required the jury to find defendant harbored a specific intent to unlawfully kill.

Relying on CALJIC Nos. 3.02 and 6.11, defendant claims he could have been convicted of conspiracy to commit murder under a natural and probable consequences theory. The trial court provided the following CALJIC No. 3.02 instruction: "One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [that crime] [those crimes], but is also guilty of any other crime

7

committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted."

CALJIC No. 6.11 also instructed the jury on joint responsibility for criminal conspiracy. The instructions stated: "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any [crime] [act] of a co-conspirator to further the object of the conspiracy, even though such [crime] [act] was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of such [crime] [act]. [¶] You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged [in Count 5] was perpetrated by [a] coconspirator[s] in furtherance of such conspiracy and was a natural and probable consequence of the agreed upon criminal objective of such conspiracy."

Given these instructions, defendant claims "if the jury had been led to believe that the object of the conspiracy was to commit a drive-by shooting . . . [citation] the jury could have thought that because the shooter had the intent to kill, [defendant] was vicariously liable for such intent, as it was a natural and probable consequence of his participation in a drive-by shooting." Not true. As the People note, the natural and probable instructions address liability for nontarget offenses, not the target offense. Here, the target offense was murder and required a finding that defendant harbored the intent to kill. And the jury necessarily determined defendant harbored the intent to kill by finding he was guilty of conspiracy to commit murder. (*People v. Medrano* (2021) 68 Cal.App.5th 177, 184 [finding the petitioner "was not convicted of conspiracy to commit first degree murder under the natural and probable consequences theory as set forth in CALJIC No. 6.11" because murder "was the object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy"].)

8

Defendant next suggests the jury may not have found he had the intent to kill because the jury acquitted him of attempted murder. But the two crimes are different. With a conspiracy, "[t]he conspiratorial agreement is itself the essence of the crime, and is what it seeks to punish." (*People v. Cortez* (2018) 24 Cal.App.5th 807, 818.) "'[O]nce one of the conspirators has performed an overt act in furtherance of the agreement, "the association becomes an active force[;] it is the agreement, not the overt act, which is punishable. Hence *the overt act need not amount to a criminal attempt* and it need not be criminal in itself."'" (*Ibid.*, italics added.) By contrast, "[a]ttempted murder requires the specific intent to kill *and* the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 7, italics added.) Thus, conspiracy "'"reaches further back into preparatory conduct than attempt . . . ."'" (*People v. Morante* (1999) 20 Cal.4th 403, 417.) As such, defendant may have conspired to murder without attempting to murder.

Finally, defendant argues this court's prior opinion suggests the object of the conspiracy was to commit a drive-by shooting rather than murder. (*Lispier I*, *supra*, G020805.) He relies on the following language in the opinion: "Such facts constitute circumstantial evidence of an *agreement* between two men to commit the drive-by shooting. Thus, the requisite elements of a conspiracy—an agreement between two or more persons with the specific intent to commit the drive-by shooting, followed by at least one overt act for the purpose of accomplishing the crime [citation] were met." (*Ibid.*) When viewed in context, this language does not change our conclusion. The court made this statement when analyzing whether there was sufficient evidence to support the conspiracy to commit murder conviction. (*Ibid.*) The court later emphasized the "prosecution consistently argued that [defendant] had the requisite intent to kill" and "never suggested the jury base its verdict on a finding of implied malice." (*Ibid.*) The court concluded it was "beyond a reasonable doubt that the jury did not convict

9

[defendant] of conspiracy to commit murder based on [an] implied malice instruction." (*Ibid.*) In short, our prior opinion does not support defendant's arguments.[5]

## DISPOSITION

The postjudgment order denying defendant's section 1172.6 petition is affirmed.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

GOETHALS, J.

---

[5] Defendant also raises an ineffective assistance of counsel claim to the extent he forfeited any of his arguments. Because the People concede there was no forfeiture and we also conclude defendant did not forfeit his arguments, we need not address the ineffective assistance of counsel claim.