Filed 12/2/20  P. v. Castellano CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B296119 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA097909) |
| v. | |
| LINDA LIZETT CASTELLANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura C. Ellison and Victor L. Wright, Judges. Affirmed as modified.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Linda Lizett Castellano appeals from the judgment of conviction entered after a jury found her guilty of one count of assault with a semiautomatic firearm. The jury also found true the allegations Castellano committed the crime for the benefit of a criminal street gang and used a firearm in the commission of the crime.

On appeal, Castellano contends there was not sufficient evidence the firearm was loaded to support her conviction. She also argues the trial court erred in failing sua sponte to instruct the jury on the lesser included offense of assault with a firearm. She further requests we remand for the trial court to conduct a hearing on her ability to pay the assessments and fines imposed by the trial court, in accordance with our opinion in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Finally, Castellano contends, the People concede, and we agree the minute order from the sentencing hearing reflects the imposition of a criminal protective order that was not part of the trial court's oral pronouncement of judgment and should be stricken.

We order the minute order modified to strike the reference to a criminal protective order and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The People's Case*
   1. *The assault of Munoz*

About 6:45 a.m. on March 14, 2018 Ismael Munoz Rodriguez[1] was standing on the sidewalk along Buford Avenue in

---

[1] Following the parties' practice at trial, we refer to Ismael Munoz Rodriguez as Munoz.

2

the Lennox area of Los Angeles County.  Munoz, who lives on Buford Avenue, was preparing to cross the street to reach his parked car to go to work.  As Munoz was about to cross the street, a four-door Nissan drove by, the rear window came down, and a woman in a hooded sweatshirt said something Munoz could not understand.

Munoz crossed the street, got into his car, and drove off.  The Nissan then turned around and pulled up next to Munoz's car while he was stopped at a stop sign.  The woman in the rear passenger seat of the Nissan, whom Munoz later identified as Castellano,[2] raised her arm, pointed a gun at Munoz through the open window, and said, "Fuck Lennox[.]  Tepas."  Munoz understood Castellano's statement was "gang talk," and he was frightened.  Castellano was about six or seven feet from Munoz when she pointed the gun at him.  Munoz testified he "wasn't going to stand [t]here and let her fire it," and after a few seconds, he drove off.

Munoz testified Castellano's gun "was a black color.  It was like a semi-automatic."  Asked what he meant when he said the gun was a semiautomatic, Munoz testified, "It was the kind of gun that police use."  When the prosecutor asked whether Munoz knew what a revolver was, Munoz responded, "Yes."  Munoz agreed a revolver looked "[l]ike those cowboy guns."  Munoz described Castellano's gun as flat, without a cylinder in the middle like a revolver.

---

[2]	Munoz identified Castellano in a photographic lineup and at trial.

3

## 2. *The incident at Felton Elementary School*

Sandra Marroquin was a teacher at Felton Elementary School in the Lennox area of Los Angeles County. About 7:30 a.m. on March 14, 2018 Marroquin was walking toward the school's gate when she was approached by a woman who was trembling and nervous. The woman told Marroquin she had just seen some men get out of a car and "put[] a gun on this kid."[3] The woman asked for Marroquin's cell phone number so she could send Marroquin a photograph she had taken of the men's car. The woman sent Marroquin the photograph, which Marroquin forwarded to the school principal and later showed it to the police. The woman told Marroquin the driver of the car was female.

## 3. *The investigation*

Shortly after 6:45 a.m. on March 14, 2018 Los Angeles County Sheriff's Department (LASD) Deputy Erik Felix responded to a call regarding Munoz's assault. Deputy Felix took Munoz's statement and photographed the scene on Buford Avenue. About an hour later Deputy Felix was dispatched to Felton Elementary School, about half a mile away, where he interviewed Marroquin regarding the second incident. Marroquin showed Felix the photograph of the vehicle she had received from the unidentified woman. The vehicle was a Nissan

---

[3]     After an Evidence Code section 402 hearing, the trial court ruled Marroquin's testimony concerning the unidentified woman's statement was admissible under the hearsay except for spontaneous statements (Evid. Code, § 1240). Castellano does not challenge that ruling on appeal.

4

Maxima with a California license plate number that matched the license plate of the vehicle owned by Castellano.

Later that night or early the next morning, Sheriff's Deputy Alex Partida stopped a silver Nissan Maxima matching the description of the car involved in the Felton Elementary School incident. Castellano's sister Silvia was driving the car. The car was towed and held for evidence and fingerprinting. On March 22, Castellano called the LASD South Los Angeles station and stated she wanted her car released to her. When Castellano came into the station to retrieve her car, she was detained and searched. A sheriff's deputy recovered Castellano's cell phone during the search, and forensic detectives obtained photographs and text messages from the phone.

4. *Gang expert testimony*

Detective David Chevez, a gang investigator for the LASD South Los Angeles area, testified as the People's gang expert. Detective Chevez testified with respect to Hispanic street gangs that upon initiation into a gang, the gang member operates as a "soldier." Once the soldier "put[s] in" work by committing crimes for the gang, he or she can move up to a higher status, and "the more violent the crimes you commit the higher status you're able to attain." Respect from fellow gang members and fear within the community are important to gangs and their members. Fear within the community allows gangs to operate because it discourages community members from reporting crimes out of fear of retaliation. Gang members put in the work by committing violent crimes like murder, attempted murder, and carjackings, but also lesser crimes such as tagging with graffiti. A gang

5

member's reputation for violence allows the member to commit more crimes because victims will not want to come forward.

Respect from rival gangs is also important, and it allows gangs to "protect their turf." Sometimes gang members will commit crimes in rival territory to show disrespect for the rival gang. Detective Chevez explained, "[W]hen a rival goes into enemy territory, it's usually to put in work to commit crimes, shoot people, rob people, tag, vandalize." Members may even "announce" these crimes by committing them in daylight in front of witnesses. Rival gang members deem such intrusions as a "big form of disrespect."

Detective Chevez was familiar with the Tepa 13 gang and had investigated crimes committed by its members, including felony possession of firearms, burglaries, robberies, carjackings, vehicle theft, assaults, attempted murders, and murders. Tepa 13 members sometimes use the shortened name "Tepa." Tepa 13 operates principally within the City of Inglewood.

The Lennox 13 gang is Tepa 13's biggest rival. Tepa 13 and Lennox 13 have had an ongoing feud since the 1970's, and rival members "shoot at each other all the time." Lennox 13's territory includes the Lennox area west of Hawthorne Boulevard—to the west of Tepa 13's territory. The attack on Munoz occurred "deep within Lennox 13 territory." Felton Elementary School is also within Lennox 13 territory.

Detective Chevez opined Castellano was an active member of Tepa 13 based on her tattoos and photographs recovered from her phone showing her posing with gang members with weapons displaying gang signs. Castellano was at the "soldier" level. Detective Chevez testified based on a hypothetical mirroring the facts of the case that the assault would have been committed to

benefit Tepa 13. Detective Chevez explained, "I believe someone pointing a gun at someone else yelling, 'Fuck Lennox. Tepas.' That [victim] is probably going to tell his neighbor, his significant other, his children, he's probably going to tell of the incident, and that alerts the community, 'Hey, Tepas just banged on Lennox.'" Further, committing a crime in broad daylight increases the boldness of the crime and benefits the gang "because it gives the gang [a] very violent reputation." "[B]anging" on an individual in rival territory would also "show[] the rival gang, which is Lennox 13 in this case, 'Hey, this is your hood and we're going to come into your hood, and disrespect your hood, and we're not scared of you.'"

On cross-examination, Detective Chevez admitted that if a gang member "banged on" someone in rival territory who was not a member of the rival gang, the nonmember would typically be able to walk away without further violence. However, on redirect examination, Detective Chevez qualified his response and testified that if the encounter with the nonmember were to occur in rival gang territory and the non-member "were to just walk away, or put up some type of resistance[,] then something would happen."

Detective Chevez also testified he and most police officers carry a semiautomatic firearm, which is "the opposite of a revolver" and "is automatically fed [ammunition] with a magazine." This is in contrast to a revolver, which shoots about five or six shots and has a round cylinder.

B.    *The Defense Case*
Castellano testified she had been a member of Tepa 13 when she was a child because the men in her family were

7

members, but she left the gang in 2013.  Castellano admitted she owned a Nissan Maxima matching the license plate number shown in the photograph received by Marroquin.  But she testified she was asleep at home on the morning of March 14, 2018, and she denied driving through Lennox, displaying a gun, threatening anyone, or saying, "F[uck] Lennox.  Tepas."

Castellano's sister, Kristine Ramoz Perez, testified Castellano lived with her, and when Perez left for work at 6:40 a.m. on March 14, 2018, Castellano's car was parked on the street.  Further, Castellano was not a morning person and was likely to have been sleeping.  Perez also testified that in 2018 Castellano was not a gang member.

C.     *The Rebuttal Case*

In rebuttal, Detective Chevez identified text messages sent in March 2018 that had been retrieved from Castellano's cell phone, in which Castellano was greeted as "Tepa" and the death of a Tepa 13 member was discussed.  Detective Chevez also identified a photograph taken of Castellano on November 12, 2017 in which Castellano did not have any tattoos on her face, and a photograph taken on January 3, 2018 that showed Castellano with Tepas 13 gang tattoos visible on her face. The text messages and photographs were admitted into evidence.

D.     *Jury Instructions, Verdict, and Sentence*

The trial court instructed the jury on assault with a semiautomatic firearm, as follows:  "In order to prove this crime, each of the following elements must be proved:  [¶]  [1.]  A person was assaulted;  [¶]  and;  [¶]  [2.]  The assault was committed with a semiautomatic firearm.  [¶]  In order to prove an assault,

8

each of the following elements must be proved:  [¶]  [1.]  A person willfully committed an act which by its nature would probably and directly result in the application of physical force on another person;  [¶]  [2.]  The person committing the act was aware of facts that would lead a reasonable person to realize as a direct natural and probable result of this act that physical force would be applied to another person;  [¶]  and  [¶]  [3.]  At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another.  [¶]  A semiautomatic firearm is a firearm that extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger."  Castellano's attorney did not request an instruction on the lesser included offense of assault with a firearm.

The jury found Castellano guilty of assault with a semiautomatic firearm (Pen. Code,[4] § 245, subd. (b); count 1) and found true she committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)) and used a firearm in the commission of the offense (§ 12022.5).  On February 25, 2019 the trial court sentenced Castellano to nine years in state prison comprised of the middle term of six years for assault with a semiautomatic firearm and the lower term of three years for the firearm enhancement.  The court imposed and stayed a 10-year sentence for the gang enhancement.  The court also imposed a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), and a parole/postrelease

---

[4]     All further undesignated statutory references are to the Penal Code.

9

community supervision restitution fine in the same amount, which the court suspended (Pen. Code, § 1202.45).  Castellano did not object to imposition of the fines and assessments or raise her inability to pay.

The trial court's February 25, 2019 minute order states the criminal protective order that had been issued under section 136.2 on June 6, 2018 would remain in effect through June 6, 2021.  However, the reporter's transcript shows the trial court did not address the protective order during the sentencing hearing.

Castellano timely appealed.

## DISCUSSION

A.  *Substantial Evidence Supports Castellano's Conviction of Assault with a Semiautomatic Firearm*

1.  *Standard of review*

"When a defendant challenges the sufficiency of the evidence for a jury finding, we review the entire record in the light most favorable to the judgment of the trial court.  We evaluate whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt."  (*People v. Vargas* (2020) 9 Cal.5th 793, 820; accord, *People v. Penunuri* (2018) 5 Cal.5th 126, 142 (*Penunuri*) ["'To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.'"].)  ""Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the

10

credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence."'"  (*Penunuri,* at p. 142; accord, *People v. Mendez* (2019) 7 Cal.5th 680, 703.)

"'"'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.'"'"  (*People v. Vargas, supra*, 9 Cal.5th at p. 820; accord, *People v. Rivera* (2019) 7 Cal.5th 306, 324.)  "'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.'"  (*People v. Westerfield* (2019) 6 Cal.5th 632, 713; accord, *Penunuri, supra*, 5 Cal.5th at p. 142 ["'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.'"].)

### 2. *Assault with a semiautomatic firearm*

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)[5]  "Assault requires the willful commission of an act that by its nature will probably and directly result in injury to another (i.e., a battery), and with knowledge of the facts sufficient to

---

[5]     Section 245, subdivision (b) provides, "Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years."

establish that the act by its nature will probably and directly result in such injury." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 269; accord, *People v. Murray* (2008) 167 Cal.App.4th 1133, 1139.) "To point a loaded gun in a threatening manner at another . . . constitutes an assault, because one who does so has the present ability to inflict a violent injury on the other and the act by its nature will probably and directly result in such injury." (*Miceli*, at p. 269.) Conversely, "[a] long line of California decisions holds that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner at another person," because without evidence the gun was loaded, the proof is insufficient a defendant had the present ability to inflict a violent injury. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, fn. 3 (*Rodriguez*); *Penunuri, supra*, 5 Cal.5th at p. 147; *Miceli,* at p. 269; *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 542 (*Lochtefeld*).)

"A defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that [the defendant] used a loaded weapon." (*Rodriguez, supra*, 20 Cal.4th at p. 13; see *People v. Mearse* (1949) 93 Cal.App.2d 834, 837 ["The acts and language used by an accused person while carrying a gun may constitute an admission by conduct that the gun is loaded."].) "[T]he fact that the gun was loaded may be inferred from circumstantial evidence, and we will uphold an assault conviction if the inference is reasonable." (*Penunuri, supra*, 5 Cal.5th at p. 147; see *Rodriguez*, at p. 11, fn. 3 ["[W]e address the required quantum of circumstantial evidence necessary to demonstrate present ability to inflict injury and thus to sustain a conviction of assault with a firearm."].)

*Rodriguez* is instructive. There, the defendant, a gang member, threatened a witness to a shooting the defendant had committed the previous day. (*Rodriguez, supra*, 20 Cal.4th at pp. 7-8.) Confronting the witness, the defendant "raised his shirt, revealing a gun in his waistband. When [the witness] remained standing in place, defendant took out his gun, put the barrel just under [the witness's] chin, and told him to keep quiet because 'I could do to you what I did to them.'" (*Id*. at p. 7.) The Court of Appeal reversed the defendant's assault conviction, observing the gun from the prior day's shooting was never recovered, and therefore the gun the defendant used must have been different because the defendant would have logically disposed of the murder weapon. (*Id*. at p. 12.) The Supreme Court reversed the judgment of the Court of Appeal, criticizing the appellate court for focusing "on what it found *lacking* in the prosecution's case and the strength of the inferences it drew from the evidence presented, rejecting contrary (but, in our view, equally logical) inferences the jury might have drawn." (*Ibid*.) Because the defendant told the witness "'I could do to you what I did to them,'" "the jury could reasonably have interpreted the warning as an admission by defendant of his present ability to harm [the witness]." (*Ibid*.) And while the absence of evidence the defendant sought out the witness "might tend to support a conclusion contrary to that reached by this jury, [that] absence does not so undermine the jury's reasoning as to warrant overturning its verdict." (*Id*. at p. 14.)

The Supreme Court in *Rodriguez* cited with approval *People v. Montgomery* (1911) 15 Cal.App. 315, 317-319, in which the Court of Appeal held that despite the absence of direct evidence the gun used in an assault was loaded and defendant's

13

testimony it was not, the jury could have reasonably found the gun was loaded based on evidence the defendant was enraged when he left a fight with the victim and later returned and declared, "'I have got you now,'" as he pointed a gun at the victim. (*Rodriguez, supra*, 20 Cal.4th at p. 13; see *Lochtefeld, supra*, 77 Cal.App.4th at pp. 541-542 [defendant's displaying the handle of a gun and threatening to shoot a woman if she did not move, then later pointing a gun at police officers with his finger on the trigger was sufficient evidence from which the jury could infer the gun was operable].)

3. *Substantial evidence supports the jury's conclusion Castellano's gun was loaded*

Castellano contends there was not substantial evidence to support an inference the gun used in the assault on Munoz was loaded. The evidence was sufficient. As discussed, the People presented evidence Castellano was a "soldier" in the Tepa 13 gang who entered "deep within Lennox 13 territory," rolled down her car window, and pointed a gun at Munoz while declaring her gang affiliation and cursing the rival Lennox 13 gang. As Detective Chevez testified, when a gang member goes into rival territory, "it's usually to put in work to commit crimes," including to shoot people. Further, Castellano made the threat openly during the daytime, which would disrespect the rival gang. Tepa 13 and Lennox 13 were feuding archrivals whose members "shoot at each other all the time." Although Detective Chevez testified a gang member would not generally fire a gun at someone who was not a gang member, if the nonmember walked away or resisted, "then something would happen." Further, by disrespecting Lennox 13, Castellano's conduct could have provoked a violent

14

response from a member of Lennox 13 in the area at the time of Castellano's "banging" on Munoz. Based on this evidence, the jury could reasonably have concluded Castellano would not have entered Lennox 13 territory and confronted Munoz in a manner that disrespected Lennox 13 by pointing an unloaded gun because she needed to be prepared to respond to a possible violent response. (See *Rodriguez, supra*, 20 Cal.4th at p. 13; *Lochtefeld, supra*, 77 Cal.App.4th at p. 542.)

Castellano contends *Rodriguez* and *Lochtefeld* are distinguishable because in those cases the defendants expressly threatened to shoot the victims. But even if the absence of specific threats to shoot could have supported a finding the gun was not loaded, it does not mean there was not substantial evidence to the contrary. (*Rodriguez, supra*, 20 Cal.4th at p. 14.)

B.    *The Trial Court Did Not Have a Duty To Instruct the Jury on the Lesser Included Offense of Assault with a Firearm*

1.    *Applicable law and standard of review*

"Under California law, trial courts must instruct the jury on lesser included offenses of the charged crime if substantial evidence supports the conclusion that the defendant committed the lesser included offense and not the greater offense." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196; accord, *People v. Smith* (2013) 57 Cal.4th 232, 239 [even in the absence of a request, a trial court must instruct "'on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged'"]; *People v. Breverman* (1998) 19 Cal.4th 142, 154-156.) "The jury's exposure to 'the full range of possible verdicts—not limited by the strategy,

15

ignorance, or mistake of the parties . . . ensure[s] that the verdict is no harsher or more lenient than the evidence merits.'" (*Gonzalez*, at p. 196; accord, *Smith*, at p. 239 ["'[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.'"].)

""'[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury.'"" (*People v. Wyatt* (2012) 55 Cal.4th 694, 698; accord, *People v. Landry* (2016) 2 Cal.5th 52, 96 ["'Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, *but not the greater*, offense.'"].) "In this regard, the testimony of a single witness, including that of a defendant, may suffice to require lesser included offense instructions." (*Wyatt*, at p. 698.) However, the trial court has no duty to instruct on a lesser included offense where "it would be speculative at best to construe the trial evidence . . . as supporting a verdict of only [the lesser offense]." (*Id.* at p. 704.)

We independently review whether the trial court erroneously failed to instruct on a lesser included offense. (*People v. Trujeque* (2015) 61 Cal.4th 227, 271; *People v. Wang* (2020) 46 Cal.App.5th 1055, 1069.) In determining whether the trial court erred, we consider the evidence in the light most favorable to the defendant. (*People v. Cortez* (2018) 24 Cal.App.5th 807, 811; *People v. Brothers* (2015) 236 Cal.App.4th 24, 30.)

16

2. *The trial court had no duty to instruct the jury on assault with a firearm because there was no evidence Castellano committed an assault with a firearm that was not semiautomatic*

Castellano contends the trial court erred in not instructing the jury sua sponte on the lesser included offense of assault with a firearm (§ 245, subd. (a)(2)). Castellano is correct that assault with a firearm is a lesser included offense of assault with a semiautomatic firearm. (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199.) But there was ==not sufficient== evidence to support a finding by the jury Castellano committed an assault with a firearm that was not semiautomatic.

The record contains substantial evidence the gun used to assault Munoz was semiautomatic. Munoz, who was only six or seven feet from Castellano, testified Castellano's gun was "like a semi-automatic." Asked what made him think the gun was semiautomatic, Munoz explained, "It was the kind of gun that police use." Munoz testified he knew what revolvers looked like, describing them as having a cylinder in the middle, "[l]ike those cowboy guns." By contrast, Castellano's gun was flat and did not have a cylinder in the middle. Munoz's testimony was corroborated by Detective Chevez, who testified he and most police officers carry semiautomatic firearms. Detective Chevez explained a semiautomatic gun is "the opposite of a revolver," which has a round cylinder. He added that a semiautomatic gun automatically feeds ammunition from the magazine.

Castellano identifies no contrary evidence that the gun was not semiautomatic, nor did his attorney expose weaknesses in Munoz's testimony through cross-examination. Instead, Castellano argues Munoz's testimony did not establish he had the

17

expertise to determine whether the gun "extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger," which is the definition of a semiautomatic firearm in the jury instructions. But recourse to the technical definition of a semiautomatic firearm was not necessary here because Munoz testified the gun was semiautomatic based on his description of the gun as flat, like those used by the police, without a round cylinder, which Detective Chevez confirmed describes a semiautomatic gun, not a revolver. Detective Chevez also testified a semiautomatic firearm is one that "is automatically fed [ammunition] with a magazine."

Castellano also contends Detective Chevez did not testify that all flat guns are semiautomatic, although he testified semiautomatic weapons were the "opposite" of revolvers, which have round cylinders. Had Castellano presented evidence that flat guns could be nonsemiautomatic guns, this would be sufficient to support a conclusion Castellano committed the lesser offense of assault with a firearm and not the greater offense of assault with a semiautomatic firearm. But she did not, nor did she otherwise challenge Detective Chevez's testimony. The absence of an opinion by Detective Chevez as to the possibility of a hypothetical flat, nonsemiautomatic gun is not evidence "'"'substantial enough to merit consideration' by the jury."'" (*People v. Wyatt, supra*, 55 Cal.4th at p. 698; accord, *People v. Landry, supra*, 2 Cal.5th at p. 96.)

C.    *Remand Is Not Warranted for an Ability-to-pay Hearing on the Fines and Assessments Imposed by the Trial Court*

Castellano contends she is entitled to an ability-to-pay hearing as to the fines and assessments imposed by the trial

18

court, relying on this court's opinion in *Dueñas, supra*, 30 Cal.App.5th 1157. Castellano acknowledges *Dueñas* was filed on January 8, 2019—six weeks before her sentencing hearing on February 23, 2019—but she argues forfeiture should not apply because her counsel was unaware of the decision and *Dueñas* marked a dramatic change in the law implicating her fundamental right to due process. Forfeiture is proper here.

In *Dueñas*, this court concluded "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655 (*Belloso*), review granted Mar. 11, 2020, S259755.)[6] In contrast to court

---

[6] Several Courts of Appeal have applied this court's analysis in *Dueñas* (e.g., *People v. Santos* (2019) 38 Cal.App.5th 923, 929-934; *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted Nov. 13, 2019, S257844 [applying due process analysis to court assessments]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030-1035), or partially followed *Dueñas* (e.g., *People v. Valles* (2020) 49 Cal.App.5th 156, 162-163, review granted July 22, 2020, S262757 [concluding due process requires ability-to-pay hearing before imposition of court facilities fee, not restitution fines]). Other courts have rejected this court's due process analysis (e.g., *People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946), or concluded the imposition of fines and fees

assessments, a restitution fine under section 1202.4, subdivision (b), "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, at p. 1169; accord, *Belloso*, at p. 655.)[7]  Section 1202.4, subdivision (c), expressly provides a defendant's inability to pay a restitution fine may not be considered as a "compelling and extraordinary reason" not to impose the statutory minimum fine.  However, as this court held in *Dueñas*, to avoid the serious constitutional questions raised by imposition of such a fine on an indigent defendant, "although the trial court is required by . . . section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas*, at p. 1172; accord, *Belloso*, at p. 655.)

---

should be analyzed under the excessive fines clause of the Eighth Amendment (e.g., *People v. Cowan* (2020) 47 Cal.App.5th 32, 42, review granted June 17, 2020, S261952; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061; *Kopp*, at pp. 96-97 [applying excessive fines analysis to restitution fines]).  The Supreme Court granted review of the decision in *Kopp* to decide the following issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments?  If so, which party bears the burden of proof regarding defendant's inability to pay?"  (Supreme Ct. Minutes, Nov. 13, 2019, p. 1622; see *Kopp, supra*, 38 Cal.App.5th 47.)

[7]     Our analysis of restitution fines under section 1202.4, subdivision (b), also applies to parole/postrelease community supervision restitution fines under section 1202.45, because these fines must be imposed "in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." (§ 1202.45, subd. (a).)

In *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 (*Castellano*), we held a defendant's failure to object to the imposition of fines and fees before *Dueñas* was filed does not constitute forfeiture of that issue. As we explained, "[N]o California court prior to *Dueñas* had held it was unconstitutional to impose fines, fees or assessments without a determination of the defendant's ability to pay. . . . When, as here, the defendant's challenge on direct appeal is based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial, reviewing courts have declined to find forfeiture." (*Castellano*, at p. 489; accord, *Belloso, supra*, 42 Cal.App.5th at p. 662; *People v. Santos* (2019) 38 Cal.App.5th 923, 931-932; *People v. Johnson* (2019) 35 Cal.App.5th 134, 137-138; contra, *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [defendant forfeited challenge by not objecting to the assessments and restitution fine at sentencing]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154 [same].)

The People contend, and we agree, Castellano forfeited her challenge because Castellano was sentenced six weeks after *Dueñas* was decided. Unlike in *Castellano*, her challenge on appeal is not "based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial." (*Castellano, supra*, 33 Cal.App.5th at p. 489.) Additionally, there are no special circumstances or legal issues that would warrant us to exercise our discretion to excuse forfeiture. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic," although "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"]; *Unzueta*

*v. Akopyan* (2019) 42 Cal.App.5th 199, 215 ["'[N]either forfeiture nor application of the forfeiture rule is automatic.'"].)

D. *The February 25, 2019 Minute Order Must Be Corrected To Strike Reference to a Continuing Criminal Protective Order*

Castellano contends, the People concede, and we agree the February 25, 2019 minute order must be corrected to strike any reference to a criminal protective order extending through June 6, 2021 because the order lacks statutory authorization and is not reflected in the trial court's oral pronouncements at the sentencing hearing.

The trial court[8] issued the criminal protective order at a pretrial hearing on June 6, 2018 pursuant to section 136.2, which permits a court to enter orders to protect witnesses and victims. (§ 136.2, subd. (a)(1) [court may issue criminal protective order "[u]pon a good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur"]; *People v. Selga* (2008) 162 Cal.App.4th 113, 118.) "[P]rotective orders issued under section 136.2 [are] operative only during the pendency of the criminal proceedings and as prejudgment orders."[9] (*Selga*, at pp. 118-119; accord, *People v. Ponce* (2009) 173 Cal.App.4th 378, 382.) Thus, the statement in the February 25, 2019 minute order that the criminal protective order would continue in effect until June 6, 2021 was erroneous.

---

8        Judge Victor Wright.

9        Section 136.2, subdivision (i), allows a criminal protective order to remain in place for up to 10 years in specified circumstances not applicable here.

In addition, there is no reference to a protective order in the reporter's transcript of the February 25, 2019 sentencing hearing. "The record of the oral pronouncement of the court controls over the clerk's minute order . . . ." (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2, accord, *People v. Sanchez* (2019) 38 Cal.App.5th 907, 919.) Appellate courts may correct clerical errors in a clerk's minute order to reflect the court's oral pronouncement. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, we order the February 25, 2019 minute order corrected to strike any reference to a criminal protective order.

## DISPOSITION

We order the February 25, 2019 minute order corrected to strike any reference to a criminal protective order. We otherwise affirm.

FEUER, J.

I concur:

RICHARDSON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

SEGAL, Acting P. J., Concurring and Dissenting.

I agree that, with the evidence Castellano declared her gang affiliation and cursed a rival gang when she pointed a firearm at Munoz, there was substantial evidence the gun Castellano pointed was loaded (although I don't think it matters she made the gang challenge during the daytime) and that Castellano committed the crime of assault with a semiautomatic firearm. But without that evidence the question whether substantial evidence supported the finding the gun was loaded is a closer call. Absent evidence of the gang challenge, we would essentially be holding that, any time a gang member points a gun, jurors may presume it is loaded, at least when the gang member is in rival gang territory.

In my view, however, the trial court erred in not instructing the jury on the lesser included offense of assault with a (not necessarily semiautomatic) firearm. Munoz did say that the firearm he saw "was like a semiautomatic" gun and that he thought it was semiautomatic because it looked more like the guns he has seen police use than those he has seen cowboys use. Hardly an expert opinion, but admissible and relevant to the issue whether the firearm Castellano pointed at him was a semiautomatic firearm. But there was no evidence Munoz had any experience with firearms or riding the range; his opinion was essentially speculation based on observing police officers and watching movies and television shows about cowboys. In addition, Munoz only saw the gun for a "matter of seconds" from six to seven feet away. While Detective David Chevez did say most police officers use semiautomatic firearms, he did not say all

of them do.[10]  By not instructing the jury on the lesser included offense of assault with a firearm, the court improperly presented "the jury with 'an "unwarranted all-or-nothing choice"'" (*People v. Eid* (2014) 59 Cal.4th 650, 657): convicting Castellano of assault with a semiautomatic firearm or, even if the jurors believed the People proved beyond a reasonable doubt the firearm Munoz saw for a few seconds was a firearm but not a semiautomatic one, acquitting her.  (See *People v. Vargas* (2020) 9 Cal.5th 793, 827 ["A trial court must instruct a jury on lesser included offenses when the evidence raises questions regarding whether every element of a charged offense is present."]; *People v. Richards* (2017) 18 Cal.App.5th 549, 559-560 [trial court erred in not instructing on a lesser included offense where the jury could have found the People did not prove one or two elements of the greater offense]; *People v. Walker* (2015) 237 Cal.App.4th 111, 116-117 [trial court erred in not instructing on possession of marijuana, as a lesser included offense of possession of marijuana for sale, where "[w]ithout a simple possession instruction, the jury had only two choices: convict on the felony sales count or acquit altogether," which "is precisely the all-or-nothing choice [the Supreme Court] concluded was improper," and "the jury should

---

[10]     The official website for the Los Angeles Police Department identifies the guns officers "are authorized to use, as their on duty primary weapon."  (<https://www.lapdonline.org/ i_want_to_know [as of Nov. 30, 2020], archived at <https://perma.cc/DEK8-KCU9>.)  None of them appears to be a revolver.  But the statement on the website is carefully limited to an officer's "primary" weapon.  As we all know from the movies and television shows Munoz watches, officers often carry a "secondary" weapon in an ankle holster, shoulder holster, or other concealed area.

have been instructed on a third choice, to wit, simple possession"].)

In concluding the trial court did not have a duty to instruct on the lesser included offense of assault with a firearm, the majority states the "record contains substantial evidence the gun used to assault Munoz was semiautomatic." (Maj. opn. *ante*, at p. 17.) I agree with the latter statement, but the majority's conclusion does not follow from it. Certainly Munoz's testimony was substantial evidence the gun he saw was semiautomatic. But that's not the test for determining whether the trial court has a duty to instruct on a lesser included offense. The correct test is not whether there was substantial evidence to support the verdict, but whether there was substantial evidence from which a reasonable factfinder could have found the defendant guilty of the lesser but not the greater offense. (See *People v. Breverman* (1998) 19 Cal.4th 142, 178, fn. 25 ["That the jury chose the greater over acquittal, and that the evidence technically permits conviction of the greater, does not resolve the question whether, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears reasonably probable the jury would nonetheless have elected the lesser if given that choice."]; *People v. Brown* (2016) 245 Cal.App.4th 140, 155 ["'it does not matter that the jury chose to convict the defendant of the greater offense over acquittal or that the defendant was convicted of the greater offense on sufficient evidence'"]; *People v. Woods* (2015) 241 Cal.App.4th 461, 475 ["the question is not whether substantial evidence supports [the defendant's] conviction on the greater offenses," but "whether, in assessing and weighing the evidence independently, the jury could have reasonably concluded that [the defendant] committed" the lesser

offense].)  The two inquiries are quite different.  Although there was substantial evidence Castellano committed an assault with a semiautomatic firearm, there was also substantial evidence she committed an assault with a non-semiautomatic firearm.  (See *People v. Huggins* (2006) 38 Cal.4th 175, 215 ["'When there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of a lesser included offense, the court must instruct upon the lesser included offense, and must allow the jury to return the lesser conviction, even if not requested to do so.'"]; *People v. Campbell* (2020) 51 Cal.App.5th 463, 501 [same].)

I acknowledge the trial court does not have a duty to instruct on a lesser included offense if "there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged . . . ."  (*People v. Kraft* (2000) 23 Cal.4th 978, 1063; see *People v. Walker*, *supra,* 237 Cal.App.4th at p. 117.)  But rejection of the prosecution's evidence here was easily explainable.  The prosecution did not recover the firearm or present any expert testimony about firearms in general, the difference between semiautomatic and other kinds of firearms, or even what kind of firearm Castellano may have used.  There was only one witness—with no evidence of his knowledge of or expertise in firearms—led by a prosecutor on direct examination to say the gun was flat and not the kind of gun used in the Wild West.  The trial court did not instruct the jury to consider, in determining whether Castellano used a semiautomatic firearm, what kinds of guns cops and cowboys use.  The court instructed the jury that a "semiautomatic firearm is a firearm that extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger," and there was no

4

evidence of any of that. It does not take much to explain why one or more jurors could have rejected this evidence as proving beyond a reasonable doubt that Castellano used a semiautomatic firearm.

Finally, on the issue of prejudice, there is a reasonable probability the jury would have convicted Castellano of assault with a firearm had the court instructed on that lesser included offense. (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 200, fn. 4 ["[*People v. Watson* (1956) 46 Cal.2d 818] applies to the failure to instruct on lesser included offenses"].) Given the relatively weak testimony about what the gun looked like, the absence of any expert testimony about different kinds of firearms and how to tell them apart, and the failure to recover the gun Castellano used, the jury easily could have found that the People proved beyond a reasonable doubt that the weapon Castellano pointed at Munoz was a firearm, but that the People did not prove beyond a reasonable doubt it was a semiautomatic firearm.

For these reasons, I would reverse the judgment with directions to allow the People to retry Castellano on the charge of assault with a semiautomatic firearm, with the court giving an instruction on the lesser included offense of assault with a firearm, or to accept a reduction of her conviction to the lesser offense. (See *People v. Richards*, *supra*, 18 Cal.App.5th at pp. 560-561 ["When a greater offense must be reversed, but a lesser included offense could be affirmed, 'we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense.'"].) Castellano would have an opportunity to request a hearing on her ability to pay any fines or fees the court imposes at resentencing.

SEGAL, Acting P. J.

5