Filed 3/14/25  P. v. Bun CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099601 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2022-0006661) |
| v. | |
| SAVETH BUN, | |
| Defendant and Appellant. | |

Defendant Saveth Bun pointed his gun at two people during a traffic dispute. After a jury found him guilty of two counts of assault with a semiautomatic firearm and related crimes, the trial court sentenced him to 11 years in state prison.  On appeal, Bun contends there was insufficient evidence his gun met the statutory definition of a semiautomatic firearm, the trial court erroneously failed to instruct the jury on the lesser included offense of assault with a firearm, and the firearm enhancement on count four should be dismissed because the trial court erroneously imposed but stayed execution of a sentence on that enhancement.  We agree with the parties that the trial court did not have the discretion to impose but stay the sentence on the enhancement for count four but

1

otherwise affirm the judgment. Accordingly, we will remand the matter to the trial court for the limited purpose of either striking the enhancement or imposing an unstayed sentence on count four.

## FACTUAL AND PROCEDURAL BACKGROUND

One morning in July 2022, an older married couple was trying to drive out of a parking lot when they noticed multiple people, including Bun, riding bicycles in front of their car. The bicyclists slowed down and blocked the car's path. When the husband honked the car horn, Bun looked at the man, extended his middle finger, and cursed at him. Bun later moved to within four feet of the front passenger window, exchanged words with the couple, and then reached behind his back with his right hand and pulled out a gun. He pointed his gun at the wife and then the husband. At trial, the wife testified that when Bun pointed the gun at the couple, he said, "I'm going to fucking kill you." Ultimately, the husband drove away while the wife called 911.

Officers of the Stockton Police Department responded to the scene. When Officer Jason Rozal responded to the incident, he saw Bun reaching down into a pile of branches and detained him at gunpoint. Officer Rozal asked other officers to look for a gun where Bun had been reaching. Another responding officer found a firearm.

When Officer Rozal testified at trial, the prosecutor showed him a box marked People's exhibit No. 10. Inside the box was a gun and a bullet magazine. Officer Rozal testified the gun was what police officers found near where Bun had been detained. The prosecutor then showed to Officer Rozal People's exhibit No. 15, a photograph of the gun on the ground where it was found. This exchange between Officer Rozal and the prosecutor followed:

"[THE PROSECUTOR:] Can you tell me a little bit about this firearm. What type of firearm is this?

"[OFFICER ROZAL:] It is a Glock. Do you mind if I --

2

"[THE PROSECUTOR:] If that will refresh your recollection, sir, please look at your report and look up when you are done.

"[OFFICER ROZAL:] Actually, you have to excuse me. It's a Polymer80 PF940C.

"[THE PROSECUTOR:] Is it a[n] automatic firearm, revolver, what type of firearm is this?

"[OFFICER ROZAL:] It's a semi-automatic."

Officer Fernando Romero "cleared" the gun at the scene by taking the magazine out of the butt of the gun and then "lock[ing] the slide back" to ensure there was no live ammunition inside the chamber. He did not find a bullet in the chamber. When he testified at trial, the prosecutor asked Officer Romero: "How would one put the round in the chamber if the magazine is inserted at the bottom of the semi-automatic firearm?" Officer Romero answered: "It could be easily done by simply racking the top slide of the firearm . . . . And once you rack it back, one of the rounds from the magazine here inserts inside the chamber. And it's instantly—one is within once you load it."

Officer Jake Toon testified that he examined and test-fired the gun found that day, which "functioned properly." The prosecutor asked, "[T]his all sounds very professional, but I want to break it down. When you pulled the trigger, did a bullet come out?" Officer Toon replied, "Yes."

Bun testified in his own defense that he was bicycling with his two children and a friend when a driver cursed at him and yelled a derogatory term used to refer to people of Southeast Asian descent. Bun said he pulled out his gun and pointed it at the married couple because he was worried the driver was going to throw something out of his car at him or hit him with his car. On cross-examination, Bun admitted that People's exhibit No. 10 included the gun he had that day, but he denied threating to kill anyone.

At the beginning of his closing argument, the prosecutor reminded the jury that Bun was charged with multiple crimes, including, "assault with a semi-automatic

3

weapon, which the defendant told you on the stand that he did." "I have to prove each element. I'll go through them with you. [¶] Assault with a semi-automatic firearm. First, folks, it's a semi-automatic firearm. That's what he admits he had.[1] That's what everyone says he has. That's what he was found with. Let's get that out of the way." In his closing argument, defense counsel argued Bun did not commit an assault because he acted in self-defense. Although he repeatedly referred to Bun's weapon as "a gun" or "the gun," counsel neither disputed nor conceded that if an assault took place, it was with a semiautomatic firearm.

The trial court instructed the jury that a "semi-automatic pistol extracts a fired cartridge and chambers a fresh cartridge with a single pull of the trigger." The trial court did not instruct the jury that assault with a firearm was a lesser included offense of assault with a semiautomatic firearm.

The jury found Bun guilty on two counts of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)),[2] being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and unlawful possession of ammunition (§ 30305, subd. (a)(1)). As to the semiautomatic firearm assaults, the jury found true the allegations that Bun personally used a firearm in the commission of the crimes. (§ 12022.5, subd. (a).) The jury found Bun not guilty of two counts of elder abuse and two counts of making criminal threats.

In October 2023, the trial court sentenced Bun to a total term of 11 years, consisting of the middle term of six years for the principal assault with a semiautomatic firearm (count 1), plus three years for the firearm enhancement (for a total of nine years); a consecutive term of two years for the other assault with a semiautomatic firearm (one-

---

[1] Our review of the record reveals Bun did not specifically admit he possessed a semiautomatic firearm. Rather, Bun admitted the firearm recovered and characterized by the officers as a semiautomatic firearm was the loaded firearm he used that day.

[2] Undesignated statutory references are to the Penal Code.

third the middle term) with the firearm enhancement stayed; and two concurrent terms of two years for the firearm and ammunition possession counts. Bun appealed.

## DISCUSSION

### I

*Evidence that the Firearm was a Semiautomatic*

Section 245, subdivision (b), states: "Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years." The elements of assault with a semiautomatic firearm are: (1) the defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person; (2) the defendant did the act willfully; (3) the defendant was aware of facts that would lead a reasonable person to realize that his or her act by its nature would directly and probably result in the application of force to someone; and (4) the defendant had the present ability to apply force with a semiautomatic weapon to a person. (*People v. White* (2015) 241 Cal.App.4th 881, 884 [outlining the elements of assault under § 245, subd. (c)]; *People v. Williams* (2001) 26 Cal.4th 779, 790 [analyzing the mens rea for assault]; § 240.) The prosecution must therefore show Bun used a semiautomatic firearm as a necessary element of this offense. (*People v. Le* (2015) 61 Cal.4th 416, 427; *In re Winship* (1970) 397 U.S. 358, 364 [the prosecution is required to prove every element of an offense beyond a reasonable doubt].) Section 245, subdivision (b) itself does not define "semiautomatic firearm" nor does it reference a definition, but a definition is found elsewhere in the Penal Code.

A firearm is any "device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (§ 16520, subd. (a).) The statutory definition of " 'semiautomatic pistol' " is a pistol with "an operating mode that uses the energy of the explosive in a fixed cartridge to extract a

5

fired cartridge *and chamber a fresh cartridge with each single pull of the trigger*." (§ 17140, italics added.)

The trial court instructed the jury with CALCRIM No. 875, which explains the elements of the offense of assault with a semiautomatic firearm and included the bracketed language consistent with the statutory definition of a semiautomatic pistol: "A semiautomatic pistol extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger." A bench note to this instruction states, "Give the relevant bracketed definitions unless the court has already given the definition in other instructions. In such cases, the court may give the bracketed sentence stating that the term is defined elsewhere." (Judicial Council of Cal., Crim. Jury Instns. (2024) Bench Notes to CALCRIM No. 875, p. 609.)

At oral argument in this court, counsel for Bun argued that because the trial court instructed the jury with the bracketed language in CALCRIM No. 875 that defined "semiautomatic pistol," the technical definition of semiautomatic firearm became an element of the offense that the prosecution was required to prove. This appears to be the concern of our dissenting colleague. Bun further argues that although the evidence contained conclusory statements by officers that the firearm was a semiautomatic firearm, those statements alone were insufficient to establish the firearm was a semiautomatic.

The People concede that no witness testified that a fresh cartridge was chambered with each pull of the trigger, but maintain that the combined testimony of the officers "nonetheless provided evidence that this is how the gun operated": (1) one officer described the gun as a semiautomatic, and said that "once you rack" the gun, one of the rounds from the magazine enters the chamber, (2) another officer testified that a bullet was expelled when he pulled the trigger, and (3) none of the officers "mention[ed] . . . that any further action needed to be taken to get another bullet into the chamber once the gun had been racked."

6

When adjudicating a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.) As Bun contends that the statutory definition of a firearm is an element of the offense of assault with a semiautomatic firearm, we independently review questions of statutory interpretation. (*People v. Obermueller* (2024) 104 Cal.App.5th 207, 217.)

The question presented here is whether the statutory definition of a semiautomatic firearm is an element of section 245, subdivision (b) such that the prosecution must present sufficient evidence that the firearm used in the assault reloaded automatically with each single pull of the trigger. For the following reasons, we conclude it is not. Rather, "[t]he statutory definition[ is] the mere codification of [the] common dictionary definition," which does not operate as an element of the offense of assault with a semiautomatic firearm. (*People v. Elam* (2001) 91 Cal.App.4th 298, 307.) We further conclude that substantial evidence supports Bun's conviction for assault with a semiautomatic firearm.

Section 15 defines a crime as " 'an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, . . . [specific] punishments.' " (*People v. Vasilyan* (2009) 174 Cal.App.4th 443, 449.) In addition to an act or omission, in order to constitute a crime "there must exist a union, or joint operation of act and intent, or criminal negligence." (§ 20.) The elements of a crime then consist of those acts or omissions forbidden or commanded by the defining statute coupled with the requisite intent. As relevant here, examining the express terms of section 245, subdivision (b) and the elements set forth in CALCRIM No. 875 reveals no indication that proof of possession of a semiautomatic firearm as an element of the offense requires specific evidence meeting the definition of a semiautomatic firearm.

7

A review of the law governing when a jury must be instructed on a definitional term as part of an element of the charged offense is helpful in our ultimate determination of whether the statutory definition of semiautomatic firearm is an element of the offense of assault with a semiautomatic firearm. A trial court has a sua sponte duty to instruct on all "general principles of law" that are closely and openly connected with the facts of the case. (*People v. Ervin* (2000) 22 Cal.4th 48, 90.) In a criminal case, the "general principles of law" include all the elements of the charged offense. (*People v. Rivera* (2019) 7 Cal.5th 306, 332.) "Also, if the elements of the offense include a term that has a technical legal meaning that is different from its common meaning, the court has a sua sponte duty to define that term." (*People v. Gonzales* (2010) 183 Cal.App.4th 24, 36; see also *People v. Elam*, *supra*, 91 Cal.App.4th at p. 307.) However, "[a] court has no sua sponte duty to define terms that are commonly understood by those familiar with the English language." (*People v. Bland* (2002) 28 Cal.4th 313, 334; accord, *People v. Krebs* (2019) 8 Cal.5th 265, 331 ["[a] court's duty to define statutory terms 'arises where the terms have a technical meaning that is peculiar to the law' "].)

Although section 245 does not reference a statutory definition of "semiautomatic firearm" it is logical to presume that, if one were necessary, it is found in section 17140. Section 17140 defines a "semiautomatic pistol" as a using the energy from firing the weapon to chamber a fresh cartridge with each single pull of the trigger. Our high court has described a semiautomatic firearm as one that " 'fires once for each pull on the trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.' " (*In re Jorge M.* (2000) 23 Cal.4th 866, 874, fn. 4.) A typical nonlegal dictionary definition of semiautomatic is: "[O]f a firearm: able to fire repeatedly through an automatic reloading process but requiring release and another pressure of the trigger for each successive shot." (Merriam-Webster Dict. Online (2024) <https://www.merriam-webster.com/dictionary/semiautomatic> [as of Mar. 14, 2025],

8

archived at: <https://perma.cc/XH8V-JGQH>.)[3] These definitions are all consistent and highly similar leading us to conclude that the term "semiautomatic pistol," as statutorily defined, is not used in a way that "differs from its nonlegal meaning" or from "the meaning that might be ascribed to the same terms in common parlance." (*People v. Estrada* (1995) 11 Cal.4th 568, 574, 575.) Accordingly, we conclude that the statutory definition of semiautomatic pistol is a descriptive term that codifies the common dictionary definition rather than provides a technical meaning peculiar to the law. Because the term "semiautomatic firearm" "is not used in a technical sense peculiar to the law" it therefore need not be defined for the jury as part of an element of the offense of assault with a semiautomatic firearm. (Cf. *People v. Elam*, *supra*, 91 Cal.App.4th at pp. 305-308 [rejecting the defendant's argument that the trial court erred in failing to sua sponte instruct the jury on the meaning of "duress" "menace" and "force" in relation to a sexual offense, concluding that statutory definitions such as these that do not provide technical meanings peculiar to the law are the "mere codification of common dictionary definitions" and do not require an instruction].)

We also find support in our conclusion from the role the statutory definition plays in supporting convictions for assault with a semiautomatic weapon. Specifically, while the definition describes the requisite firearm for a conviction under section 245, subdivision (b), a conviction need not be supported by evidence of use of the automatic reloading mechanism described by the definition. For example, "[a] person may commit

---

[3]    Our dissenting colleague cites to other definitions for "semiautomatic firearm" that appear inconsistent with the definition provided by section 17140 and the California Supreme Court. We do not believe the existence of broader definitional language jeopardizes our reasoning, especially where there was no indication either the parties or the jury was confused by the term "semiautomatic firearm." Indeed, semiautomatic handguns are in common use in this country. (See, e.g., *Renna v. Bonta* (S.D.Cal. 2023) 667 F.Supp.3d 1048, 1061 [semiautomatic pistols are handguns, and handguns are " 'indisputably in common use' " today].)

an assault under the statute by using the gun as a club or bludgeon, regardless of whether he could also have fired it in a semiautomatic manner at that moment." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 269; see *id*. at pp. 269-271 [affirming conviction for assault with a semiautomatic firearm where there was overwhelming evidence that the defendant used his semiautomatic firearm as a club or bludgeon].) Indeed, "nothing in section 245, subdivision (b), or in any apposite case law, indicates that assault with a semiautomatic weapon requires proof the gun was operable as a semiautomatic at the time of the assault." (*Id*. at p. 270.) From *Miceli*, it is clear that evidence pertaining specifically to the automatic reloading mechanism has minimal importance for a conviction under section 245, subdivision (b). We note that neither Bun nor our dissenting colleague provide authority or analysis for their contrary position that the technical definition of "semiautomatic firearm" becomes an element of section 245, subdivision (b) when a jury is instructed on the statutory definition.

We also reject the contention, discussed at oral argument, that by including the bracketed definition without objection the parties agreed that definition constituted an element of the offense *in this case*. "[T]he prosecution, not the defendant, is the party traditionally responsible for determining the charges. When the prosecution discharges this responsibility by filing an accusatory pleading, it assumes the obligation to prove beyond a reasonable doubt all the elements, but only the elements, of the stated charge and any lesser offense necessarily included therein." (*People v. Birks* (1998) 19 Cal.4th 108, 128.) To allow the parties to agree upon elements of the offense in a case-specific manner upsets the prosecutor's obligation and creates the potential for a departure from the rule of law applied to all in favor of a preference for the law the parties believe should apply to a particular defendant. This outcome would likely be rife with constitutional implications beyond the scope of this appeal. At minimum, such an approach would infringe on the defendant's constitutional right to notice of the charges. (See *id*. at p. 125.) We see no basis for supporting this approach.

Nevertheless, we are not overly concerned with the presence of the bracketed definition in the jury instruction despite the lack of evidence regarding the firearm's ability to reload automatically with each pull of the trigger. CALCRIM No. 875 is an accurate statement of the law that contains a bracketed definition describing characteristics of a semiautomatic firearm that is consistent with the ordinary common dictionary definition. The jury was also instructed that "[s]ome words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." (CALCRIM No. 200.) Because the bracketed description in the instruction is not different than the ordinary definition of the term, the jury was not necessarily required to pay strict attention to it. Although Bun argued at oral argument that the record does not establish the jury in this case would subjectively understand the term "semiautomatic firearm," terms in common usage "are presumed to be within the understanding of persons of ordinary intelligence." (*People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1229-1230.) And the record does not reveal any confusion by the jury, including any communication from the jury indicating it did not understand what was required to prove the nature of the firearm used in the offense.

In short, we conclude that the definition of "semiautomatic pistol" is not a term with a technical meaning requiring the jury to be so instructed as part of the elements of the offense. If there is substantial credible evidence to establish that the weapon used in the assault was a semiautomatic firearm under section 245, subdivision (b), such a conviction is not thwarted by the prosecution's failure to present specific evidence that the firearm reloads automatically with each pull of the trigger.

11

## II

*Sufficient Evidence Supports the Conviction of Assault with a Semiautomatic Firearm*

Factually, there is substantial evidence to support Bun's conviction. Officer Rozal testified that the gun was a semiautomatic, choosing that category over multiple other types of firearms. Officer Romero explained that a bullet could be loaded into the empty chamber of the gun by racking the top slide of the firearm. And Officer Toon testified that the firearm "functioned properly" and a bullet came out of the gun when he fired it. Although nobody testified that the gun automatically reloaded a bullet into the chamber with the pull of a trigger, the jury heard the officers describe the firearm as a semiautomatic firearm along with certain characteristics of that firearm and that the firearm was functioning as intended. The jury saw the gun and bullet magazine. This evidence went undisputed. Indeed, our review of the record reveals no meaningful challenge to the evidence that the firearm Bun used in the assault was a semiautomatic. Rather, the jury was asked to consider whether the assault was committed in self-defense. While the prosecution has the burden in a criminal case to prove each element of each offense beyond a reasonable doubt (*People v. Aranda* (2012) 55 Cal.4th 342, 353), that does not mean it was incumbent on the prosecution to rule out all possible or imaginary facts that may rebut the evidentiary support for the offense (*People v. Andrews* (1965) 234 Cal.App.2d 69, 74), especially in cases where there is no evidence to the contrary but the defendant merely rests on the presumption of innocence.

## III

*Jury Instruction on Lesser Included Offense*

Bun contends the trial court prejudicially erred in failing to instruct the jury on the lesser included offense of assault with a firearm because the nature of the weapon used was in dispute and a jury unconvinced that it was semiautomatic might nonetheless have convicted Bun of assault with a firearm.

12

A semiautomatic firearm assault cannot be committed without also committing a firearm assault. Therefore, firearm assault is a lesser included offense of a semiautomatic firearm assault. (*People v. Martinez* (2012) 208 Cal.App.4th 197, 199.) The trial court must instruct on a lesser included offense if substantial evidence has been presented indicating that the defendant is guilty only of that lesser offense. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.) "Substantial evidence" in this context is evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed. (*Ibid*.) The trial court does not have a duty to instruct on a lesser included offense if "there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged . . . ." (*People v. Kraft* (2000) 23 Cal.4th 978, 1063; see *People v. Walker* (2015) 237 Cal.App.4th 111, 117.) The failure to instruct on a lesser included offense in a noncapital case is subject to reversal only when the defendant demonstrates that it is reasonably probable the error affected the outcome of the trial. (*People v. Breverman* (1998) 19 Cal.4th 142, 165, disapproved on another ground in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.)

We independently review whether the trial court erroneously failed to instruct on a lesser included offense. (*People v. Trujeque* (2015) 61 Cal.4th 227, 271; *People v. Wang* (2020) 46 Cal.App.5th 1055, 1069.) In determining whether the trial court erred, we consider the evidence in the light most favorable to the defendant. (*People v. Cortez* (2018) 24 Cal.App.5th 807, 811; *People v. Brothers* (2015) 236 Cal.App.4th 24, 30.)

Here, the only evidence presented to the jury was that the firearm was a semiautomatic. Multiple officers testified that the firearm found was a semiautomatic and the jury saw the weapon. This evidence went unchallenged and uncontradicted. The jury sent no notes or questions indicating it was confused by the testimony regarding the nature of the firearm. When the jury found that Bun committed assault as to counts one and four, under the circumstances of this case it necessarily found he did so with a semiautomatic firearm. (See *People v. Miceli*, *supra*, 104 Cal.App.4th at pp. 272-273

13

[where the only evidence was that the firearm used in the assault was a semiautomatic, the court did not err in failing to instruct on a lesser included offense].) Thus, it is not reasonably probable the jury would have reached a different result if it had been given the opportunity to convict Bun of assault with a firearm under section 245, subdivision (a)(2). Because "there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged" (*People v. Kraft*, *supra*, 23 Cal.4th at p. 1063), the trial court did not err in failing to instruct the jury on the lesser included offense of assault with a firearm.

IV

*Firearm Enhancement on Count Four*

We agree with the parties that the trial court erred by imposing then staying the sentence for the firearm enhancement (§ 12022.5, subd. (a)) as to count four. However, we disagree with Bun that the enhancement for count four must be dismissed because staying the sentence "was the functional equivalent of dismissing it." Instead, we shall remand the matter for resentencing.

"We consider a trial court's sentencing decisions under an abuse of discretion standard of review." (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874.) " 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

As relevant here, the trial court considered two possible approaches to reducing Bun's sentence. Prior to sentencing, Bun argued some counts were subject to section 654. Bun also argued the firearm enhancement associated with count four should be dismissed pursuant to section 1385. As to count four, the trial court disagreed that section 654 applied because there were multiple victims. The trial court further stated,

14

"As to the enhancement as to Count 4, again, the Court is not going to exercise their discretion under 1385 to dismiss it. Both victims . . . clearly saw the semi-automatic firearm. Again, this is in the middle of the day. They were extremely upset by it. So the Court is going to impose one-third the midterm of that, for one year of four months, but the Court is going to stay the punishment on that."

"Ordinarily, an enhancement must be either imposed or stricken 'in furtherance of justice' under . . . section 1385. [Citations.] The trial court has no authority to stay an enhancement, rather than strike it—not, at least, when the only basis for doing either is its own discretionary sense of justice." (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364; accord, *People v. Bay* (2019) 40 Cal.App.5th 126, 139.) Section 12022.5, subdivision (a) provides for an additional term of imprisonment for the use of a firearm in the commission or attempted commission of a crime. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124.) Under section 12022.5, subdivision (c), the court may, in the interest of justice pursuant to section 1385 strike or dismiss an enhancement. (§ 12022.5, subd. (c); see *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1085-1086.) If section 654 is applicable, the sentence on a count and all enhancements must be stayed to avoid multiple punishment for the same acts or omissions. (§ 654.) However, no authority exists to permit a court to stay a firearm enhancement on a count (without also staying the entire sentence on the count pursuant to § 654). (See *Lopez*, at p. 364; § 1385, subds. (a), (b)(1) [authorizing courts to strike or dismiss enhancements or the punishment for such enhancements].)

The parties agree, as do we, that the trial court erred in staying the sentence on the firearm enhancement. Contrary to Bun's contention, however, the record does not establish the trial court imposed the functional equivalent of a dismissal of the enhancement such that we are compelled to dismiss the enhancement. Rather, we conclude the record is ambiguous regarding the court's intent on this enhancement. If the court intended to strike or dismiss the enhancement, its express refusal to strike the

15

enhancement under section 1385 was contrary to that intent. Similarly, if the court wanted to stay the enhancement under section 654, its refusal to stay count four under section 654 contradicted that intent. And, neither section 1385 nor 654 allowed the court to stay the execution of sentence on the enhancement. Thus, we must reverse the sentence associated with the enhancement on count four.

Due to the ambiguity in the record, this matter should be remanded to allow the trial court to exercise its discretion to either impose, strike, or dismiss the enhancement in count four under the provisions of section 1385. (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391; *People v. Ochoa* (2020) 53 Cal.App.5th 841, 853 [remand for resentencing appropriate where record was "at the very least ambiguous as to whether the court understood" its sentencing discretion]; see *People v. Lua* (2017) 10 Cal.App.5th 1004, 1021 [remanding for resentencing where some of the trial court's comments raised serious doubts that the court understood its discretion and the record was therefore "ambiguous" on the issue].) "When part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## DISPOSITION

The judgment is affirmed, and the matter is remanded for resentencing consistent with this opinion.

_____/s/_____<br>
EARL, P. J.

I concur:


_____/s/_____<br>
RENNER, J.

16

BOULWARE EURIE, J., Dissenting.

Without a doubt, to be found guilty of a violation of Penal Code[1] section 245, subdivision (b), it must be established that the person used a semiautomatic firearm in committing an assault. And, as the majority opinion correctly notes, section 245, subdivision (b) does not internally define what constitutes a semiautomatic firearm. Here, using CALCRIM No. 875, the trial court instructed the jury that a "semi-automatic pistol extracts a fired cartridge and chambers a fresh cartridge with a single pull of the trigger." On appeal, defendant Saveth Bun argued that there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of the crime of assault with a semiautomatic firearm because there was insufficient evidence that the gun he pointed at others chambered a fresh cartridge with each pull of the trigger.[2] In their briefing, the People argued that the combined trial testimony of peace officers *was* sufficient to prove that a fresh cartridge was chambered with each pull of the trigger. In a twist, the majority opinion concludes no such evidence was necessary because proof that the relevant firearm "reloaded automatically with each single pull of the trigger" (maj. opn. *ante*, at p. 7) is not an element of section 245, subdivision (b). The core issue this case presents, as I see it: Given the characteristics of a semiautomatic firearm and the People's concession no evidence was introduced regarding how cartridges are chambered, is it sufficient to fill in the evidentiary gap with conclusory testimony? The answer, I am persuaded, should be no.

---

[1] Undesignated statutory references are to the Penal Code.

[2] The majority opinion correctly characterizes argument by counsel for Bun as having been made at oral argument. Understandably, counsel for Bun did not make certain arguments earlier because the People never contested the notion that the statutory definition of a semiautomatic firearm is an *element* of section 245, subdivision (b). The issue was explicitly raised for the first time at oral argument.

1

The phrase "semiautomatic firearm" in section 245, subdivision (b) has one meaning; it means a firearm that "extract[s] a fired cartridge and chamber[s] a fresh cartridge with each single pull of the trigger."  (§ 17140.)  But the same phrase has multiple meanings outside the law.  For example, it could mean, consistent with section 245, subdivision (b), a firearm "able to fire repeatedly through an automatic reloading process but requiring release and another pressure of the trigger for each successive shot."  (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/semiautomatic> [as of Mar. 14, 2025], archived at <https://perma.cc/U2PK-TJYT>.)  But it could also mean, inconsistent with section 245, subdivision (b), a firearm "able to fire bullets one after the other quickly but not automatically" (Britannica Dict. Online (2025) <https://www.britannica.com/dictionary/semiautomatic> [as of Mar. 14, 2025], archived at <https://perma.cc/ADU4-MBUY>) or "a weapon that fires one round of bullets each time the trigger is pressed" (Cambridge Dict. Online (2025) <https://dictionary.cambridge.org/us/dictionary/english/semiautomatic> [as of Mar. 14, 2025], archived at <https://perma.cc/5WNR-RX4K>).[3]

---

[3]  Those broader definitions include a revolver, which could "rapidly fire successive bullets" (*Miller v. State* (Fla. 2024) 379 So.3d 1109, 1115) and, in some cases, could even fire a bullet each time the trigger is pressed (*Stewart v. Nevada* (D. Nev., Feb. 19, 2013, No. 2:09-CV-01063-PMP) 2013 WL 623070, *4, fn. 1 [for a double-action revolver, "each trigger pull" cocks the hammer, releases it, and "rotat[es] the cylinder to bring the next cartridge into position for firing"]).  But a revolver is not a semiautomatic firearm within the meaning of section 245, subdivision (b)—even though some revolvers are called "semiautomatic revolvers."  (See *People v. Soojian* (2010) 190 Cal.App.4th 491, 501.)  A user's pull of a revolver's trigger, for instance, does not chamber a fresh cartridge; the user instead must manually insert fresh cartridges into the revolver's "rotating cylinder containing a number of chambers," "usually five or six."  (Cal. Dept. of Justice, Bureau of Firearms: Firearm Safety Certificate (FSC) Study Guide (rev. June 2020) at preface & p. 12 <https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/hscsg.pdf> [as of Mar. 14, 2025], archived at <https://perma.cc/DXP8-KK3Y>.)

Given Bun's challenge to the sufficiency of the evidence, we independently review the record in the light most favorable to the prosecution to determine whether there is substantial evidence, that is, evidence that is reasonable, credible, and of solid value, such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt. (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) Here, the majority opinion finds substantial evidence that the firearm was a semiautomatic firearm within the meaning of section 245 because, in one sentence, an officer called the gun a semiautomatic. (Maj. opn. *ante*, at pp. 11-12.) But that conclusory statement is not evidence of solid value that the gun extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger. Even the People appear to acknowledge as much. And while the People still argue that substantial evidence shows the gun here was a semiautomatic under section 245, subdivision (b), their argument is unpersuasive. Apart from noting the conclusory claim that Bun's firearm was a semiautomatic, they note that one officer explained that a bullet could be loaded into the empty chamber of the gun by racking the top slide of the firearm. And they note that another officer testified that a bullet came out of the gun when he fired it. However, no one testified that the gun automatically reloaded a cartridge into the chamber with the pull of a trigger. Nor did the limited testimony permit the jury to reasonably infer that the gun automatically reloaded a cartridge into the chamber with the pull of a trigger.[4]

---

This illustrates why the majority opinion's conclusion that section 17140's definition of a semiautomatic pistol "is a descriptive term that codifies the *common dictionary definition*" (maj. opn. *ante*, at p. 9, italics added) is, in my opinion, not correct.

[4] The majority opinion reasons that the prosecution's burden in a criminal case does not mean the prosecution must "rule out . . . imaginary facts," "especially in cases where . . . the defendant *merely* rests on the presumption of innocence." (Maj. opn. *ante*, at p. 12, italics added.) I am not of the opinion that the prosecution's duty to prove each element of an offense beyond a reasonable doubt is somehow alleviated by a criminal defendant's election not to present evidence that contradicts the prosecution's evidence.

3

(Cf. *Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 596-598 [ruling a peace officer's testimony that he " 'believe[d] [a crime victim] contributed to his demise' " was "conclusory and not supported by any facts," and thus was not substantial evidence for the determination that the victim's actions contributed to the cause of his death]; *id.* at p. 598 [the concept of "substantial" evidence cannot be deemed synonymous with the concept of "any" evidence].)

Contrary to the majority opinion's reasoning, I do not find that *People v. Miceli* (2002) 104 Cal.App.4th 256 stands for the proposition that "evidence pertaining specifically to the automatic reloading mechanism has minimal importance for a conviction under section 245, subdivision (b)." (Maj. opn. *ante*, at p. 10.) In that case, the court rejected the contention that insufficient evidence supported a conviction for assault with a semiautomatic firearm where the defendant used the firearm as a bludgeon. The defendant maintained that his firearm "was not operable as a semiautomatic weapon" because it was not "loaded with a clip." (*Miceli*, at p. 268.) The court held that "nothing in section 245, subdivision (b), or in any apposite case law, indicates that assault with a semiautomatic weapon requires proof the gun was *operable as a semiautomatic* at the time of the assault." (*Miceli*, at p. 270, italics added.) Bun's firearm's operability has never been disputed in this case. The issue here is its *design*. (See § 17140 [" 'semiautomatic pistol' means a pistol with an operating *mode* that uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger" (italics added)].) Thus, because "cases are not authority for propositions not considered" (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10), I find that *Miceli* does not stand for the proposition that the majority opinion identifies.

Therefore, I would reverse the jury's semiautomatic firearm finding but not Bun's convictions. Because the crime of assault with a firearm is a lesser included offense of the crime of assault with a semiautomatic firearm (*People v. Martinez* (2012) 208

4

Cal.App.4th 197, 199), I would modify the judgment to reflect convictions for assault with a firearm (§ 245, subd. (a)(2)).  (See *People v. Bailey* (2012) 54 Cal.4th 740, 748 & fn. 3 [under §§ 1181, subd. 6, and 1260, an appellate court that finds insufficient evidence to support a conviction for a greater offense may modify the judgment to reflect a conviction for a lesser included offense].)  I would also remand for a full resentencing.


                                          _____/s/_____

                                          BOULWARE EURIE, J.